Ronald J. FISCHBACH, Appellee,

v.

**DISTRICT OF COLUMBIA DEPART-MENT OF CORRECTIONS and Hallem H. Williams, Jr., Appellants.**

Nos. 95–7154, 95–7167.

United States Court of Appeals,
District of Columbia Circuit.

Argued March 8, 1996.

Decided March 11, 1996.

Opinion Issued July 2, 1996.

As Amended July 15, 1996.

Martin B. White, Assistant Corporation Counsel, Washington, DC, argued the cause for appellants, with whom Charles F. Ruff, Corporation Counsel, Charles L. Reischel, Deputy Corporation Counsel, and Lutz A. Prager, Assistant Deputy Corporation Counsels, were on the briefs. Garland Pinkston, Jr., Principal Deputy Corporation Counsel, and Donna M. Murasky, Assistant Corporation Counsel, entered appearances.

Gary H. Simpson, Bethesda, MD, argued the cause and filed the brief for appellee.

Before: EDWARDS, Chief Judge, SILBERMAN, and GINSBURG, Circuit Judges.

GINSBURG, Circuit Judge:

Ronald Fischbach, an employee of the District of Columbia Department of Corrections, claims that he was denied a promotion because he is white. After a bench trial, the district court entered judgment in his favor. In an unpublished order issued March 11, 1996, we reversed, 80 F.3d 558 (table); we now explain the basis of that disposition.

## I. Background

In 1984, Dr. James Lomax retired from his position as Chief Psychologist at a Department of Corrections facility called Youth Center I, located in the Lorton prison complex. In early 1985, when the Department moved to replace Dr. Lomax, Mr. Fischbach, who had worked as a counseling psychologist at Youth Center I for sixteen years and had served as Acting Chief Psychologist when Dr. Lomax was absent, applied for the job. Mr. Fischbach, who has a master's degree in psychology, testified that during most of 1984 he performed all of the administrative, therapeutic, and counseling duties in the psychology unit at the Youth Center (he was the only psychologist there), and that he had prepared the psychology unit's budgets for every fiscal year but one from 1980 through 1985. His supervisors had rated Fischbach's performance "excellent" for six consecutive years. Nonetheless, in February 1985 the position of Chief Psychologist went to someone else.

The process through which the Department filled the job of Chief Psychologist deviated in several important respects from the process prescribed by the District's personnel rules. The Department offered unrebutted testimony, however, establishing that it was "the same process as is nominally [normally?] used by the Department ... year in, year out."

First, the D.C. Office of Personnel reviewed written applications, on the basis of which it deemed 10 applicants qualified. Next, a panel of three Department of Corrections officials interviewed each of those 10 applicants. The panel consisted of James McKenna, the Assistant Administrator of Youth Center I; Jack Miller, the Chief Psy-

chologist at the Lorton Central Facility; and Sam Rosser, the Administrator–Designate for a planned facility at Lorton. McKenna and Miller are white; Rosser is black.

The panel asked each applicant nine questions and awarded up to ten points for each answer. Dr. Gregory Price, who is black, received the highest score (77.67). Since 1980 Dr. Price had taught psychology at Texas Southern University, and had served as either a supervising psychologist or the chief psychologist at three facilities within the Oklahoma Department of Corrections. The panel assigned Vinson Reynolds, who is white, the second highest score (76.67), and Fischbach came in third (with 70.76).

Finally, the panel forwarded these results and the scores of the other seven applicants interviewed to James Palmer, the Director of the Department of Corrections, along with its recommendation to hire Price. Palmer selected Price for the job based upon his having the highest numerical score.

In March 1987 Fischbach filed a complaint in the district court charging that the Department had denied him the promotion he sought because he is white and because he is Jewish, in violation of Title VII of the Civil Rights Act of 1964 as amended, 42 U.S.C. § 2000e, and, in a claim dropped before trial, because he was 41 years old, a violation of the Age Discrimination in Employment Act, 29 U.S.C. §§ 621 et seq. After a bench trial, the district court found no evidence of religious discrimination but did conclude that the Department had denied Fischbach the promotion because he is white. The District of Columbia appeals.

## II. Analysis

As we have seen, the process by which Dr. Price was selected over Mr. Fischbach had three stages, involving sequentially the D.C. Office of Personnel, the interview panel convened by the Department of Corrections, and the selecting official and head of the Department, James Palmer. The district court failed to specify the stage at which it thought racial discrimination corrupted this process. The court did find, however, that Palmer selected Dr. Price solely upon the basis of the scores that the panel assigned to the

applicants. That finding precludes the possibility that Palmer discriminated against Fischbach on the basis of his race. Further, because the Office of Personnel stated no preference as between Dr. Price and Mr. Fischbach, it can hardly be thought the source of the problem. Therefore, in order to make sense of the district court's memorandum opinion, we must infer that the judge thought that the interview panel, composed of two whites and one black, ranked Mr. Fischbach below Dr. Price because the former is white and the latter is black. The evidence, however, does not support this conclusion.

■ As a Title VII plaintiff, Fischbach bore "[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated" against him. *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 253, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981). Under the familiar burden-shifting framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), the plaintiff must initially prove by a preponderance of the evidence that he was qualified for the position he sought but was rejected under circumstances which "permit the trier of fact to infer the ultimate fact of intentional discrimination." *St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 511, 113 S.Ct. 2742, 2749, 125 L.Ed.2d 407 (1993) (original emphasis).

■ Here the Department concedes that Fischbach has made out a prima facie case of discrimination. We therefore proceed directly to the second step under *McDonnell Douglas,* in which it is the employer's burden to articulate a non-discriminatory reason for its action. *Burdine,* 450 U.S. at 254–55, 101 S.Ct. at 1094–95. The Department says that it chose between Dr. Price and Mr. Fischbach based solely upon their answers during the interview, as reflected in the score that the interview panel assigned to each applicant. Being both reasonable and non-discriminatory, that is enough to take us to the third step under *McDonnell Douglas:* Fischbach must prove that the employer's proffered explanation is a pretext. *Burdine,* 450 U.S. at 256, 101 S.Ct. at 1095.

■ At this point, the district court seems to have lost its compass. Even if a court suspects that a job applicant "was victimized by [ ] poor selection procedures" it may not "second-guess an employer's personnel decision absent demonstrably discriminatory motive." *Milton v. Weinberger,* 696 F.2d 94, 100 (D.C.Cir.1982). Once the employer has articulated a non-discriminatory explanation for its action, as did the District here, the issue is not "the correctness or desirability of [the] reasons offered ... [but] whether the employer honestly believes in the reasons it offers." *McCoy v. WGN Continental Broadcasting Co.,* 957 F.2d 368, 373 (7th Cir.1992). *See also Pignato v. American Trans Air, Inc.,* 14 F.3d 342, 349 (7th Cir.1994) ("It is not enough for the plaintiff to show that a reason given for a job action is not just, or fair, or sensible. He must show that the explanation given is a phony reason").

■ Evidence indicating that an employer misjudged an employee's performance or qualifications is, of course, relevant to the question whether its stated reason is a pretext masking prohibited discrimination, *see Parker v. HUD,* 891 F.2d 316, 322 (D.C.Cir. 1989); if the employer made an error too obvious to be unintentional, perhaps it had an unlawful motive for doing so. Short of finding that the employer's stated reason was indeed a pretext, however—and here one must beware of using 20/20 hindsight—the court must respect the employer's unfettered discretion to choose among qualified candidates. *Ramey v. Bowsher,* 915 F.2d 731, 735 (D.C.Cir.1990). *See also Dale v. Chicago Tribune Co.,* 797 F.2d 458, 464 (7th Cir.1986) (district judge does not sit as "super-personnel department that reexamines an entity's business decisions"). Here the district court found that both Dr. Price and Mr. Fischbach were qualified for the position of Chief Psychologist—indeed the court went so far as to disclaim any suggestion that Dr. Price was not "highly qualified"—but found also that Mr. Fischbach was the more qualified applicant. The Department does not dispute that finding, but it need not do so in order to prevail here. Title VII liability cannot rest solely upon a judge's determination that an employer misjudged the relative qualifica-

tions of admittedly qualified candidates. *Ramey,* 915 F.2d at 735.

The court also found, and the District concedes, that the selection process followed by the Department in this case differed substantially from the process prescribed in the District's personnel regulations. Unrebutted testimony, however, makes clear that "the process used with respect to the filling of the position for which Mr. Fischbach applied [was] the same process as is nominally [*sic*] used by the Department ... year in, year out." The district judge referred to this testimony in his memorandum opinion and apparently credited it; the record reveals no reason not to do so. Yet the judge appears also to have regarded the evidence as irrelevant, for he gave it no weight in his analysis.

■ An employer's failure "to follow its own regulations and procedures, alone, may not be sufficient to support" the conclusion that its explanation for the challenged employment action is pretextual. *Johnson v. Lehman,* 679 F.2d 918, 922 (D.C.Cir.1982). In this case, the Department's having followed a procedure other than that prescribed by its regulations lends no support at all to the plaintiff's inference that its stated reason for choosing Dr. Price over Mr. Fischbach is a pretext. In fact, the procedure that the Department followed is reasonable and was, according to undisputed testimony, its usual procedure. That is, departure from the prescribed procedure had become the norm. In these circumstances, we see no basis for concluding that the procedure the Department followed was implausible or that the Department did not, in fact, rely upon it.

The district court was troubled by the interview panel's failure to consider each candidate's written application, *i.e.,* in addition to his or her answers at the interview. Mr. Fischbach, however, does not dispute that the panel relied upon the D.C. Office of Personnel to preview the applicants' written submissions in order to identify a pool of qualified applicants from which the panel would recommend one based solely upon the interview. Nothing about this procedure is so peculiar as to suggest that it was not, in fact, followed. Selecting a pool of qualified

candidates based upon their written credentials and then making a final selection based upon personal interviews is an obviously reasonable method of hiring a professional employee.

The judge also faulted the panel for giving "little or no consideration to the background or the experience of the applicants." Among the nine questions the panel posed to each applicant, however, four concerned the applicant's background and experience.[1] James McKenna, who appears to be the only member of the interview panel to testify on this case, recalled that he was dissatisfied with Fischbach's answers to two of these questions.

Moreover, the other five interview questions concerned the way in which the applicant would approach the job.[2] There is nothing the least bit fishy about the interviewers' giving slightly less emphasis to the applicants' credentials than to the manner in which each candidate proposed to do the job—especially when one considers that they had the benefit of a prior determination that all of the interviewees were qualified.

In forming its own opinion that Mr. Fischbach was more qualified than Dr. Price to be Chief Psychologist, the district court considered only the candidates' background and prior experience. While the evidence does not show whether Price's answers to the interviewers' forward-looking questions tipped the balance in his favor, it was not the Department's obligation to prove that they did. Rather, Fischbach was obliged to prove that the Department had preferred Price not upon the basis of his answers at the interview, but instead because of his race.

Fischbach claims that the Department's basis for hiring Price rather than promoting Fischbach was sufficiently subjective to support an inference of discrimination. He fails, however, to point to any finding by the district court or to any evidence suggesting that the Department relied upon any highly subjective criterion, such as "interpersonal skills." *Compare Giacoletto v. Amax Zinc Co., Inc.*, 954 F.2d 424, 427–28 (7th Cir.1992). Absent such evidence, we must reject the claim.

Finally, the district court found that the Department had failed to maintain "some of the material utilized in the selection process." Fischbach now argues that he is therefore entitled to an inference in his favor on the ultimate issue of discrimination. The district court, however, made no finding that there was such spoliation as would support an inference of discriminatory intent, and we see no basis for saying that it should have. Rather, the court mentioned the Department's recordkeeping lapse merely as an example of the Department's failure to comply with its own regulations—which, as we have seen, is a matter of no moment in this case.

In sum, there is insufficient evidence in the record to support the district court's findings that "the decision to select Dr. Gregory Price was made early on and perhaps prior to his appearance and the appearance of the other applicants before the panel" and that "it was unlikely that [Fischbach] was going to receive the position, notwithstanding his extensive background and experience ... because of [his] race." Although Fischbach testified that prior to applying for the position of Chief Psychologist he had been passed over by the Department for certain administrative assignments, nothing in the record suggests that those decisions were based upon his race or had anything to do with the Department's later decision not to promote him. The De-

---

1. These questions were: (1) What clinical skills/background would you bring to the job? (2) Describe testing instruments you are familiar with. (3) What special qualifications would you bring to the job, i.e., professional memberships, specialized training applicable, etc.? (4) Describe your supervisory background or those skills which you feel are important for a manager/supervisor.

2. The interviewers asked: (1) What testing instruments would you opt for in a youth setting?

(2) Discuss your preferred treatment modality and why it would apply in a youth setting? (3) Based on what you know concerning the position, describe your perception of the role and what you will do in applying this understanding of the job. (4) As a manager, what techniques would you apply (supervisory) to insure adequate performance by subordinates? (5) What legal implications are involved in psychological service delivery in a correctional setting?

partment selected Dr. Price over Mr. Fischbach through a reasonable procedure that was in fact the standard procedure, albeit not the procedure called for under local law.

### III. Conclusion

The evidence of record is not sufficient to prove that the Department chose Dr. Price over Mr. Fischbach for any reason other than the one that the Department gave—*i.e.*, that the panel of three interviewers preferred Price's answers to Fischbach's. The plaintiff has thus failed to carry his burden under the third step in the *McDonnell Douglas* analysis. For that reason, the judgment of the district court was earlier

*Reversed.*