Antonio M. RIDLEY, Plaintiff,

v.

DISTRICT OF COLUMBIA, Defendant.

Civil Action No. 96–01946 (CRR).

United States District Court,
District of Columbia.

Nov. 18, 1996.

Fred A. Thompson, Upper Marlboro, MD, for Plaintiff.

Nancy S. Schultz, Assistant Corporation Counsel, and Bruce Brennan, Assistant Corporation Counsel, with whom Charles F.C. Ruff, Corporation Counsel, Washington, DC, appeared on the briefs, for Defendant.

## MEMORANDUM OPINION OF CHARLES R. RICHEY UNITED STATES DISTRICT JUDGE

CHARLES R. RICHEY, District Judge.

Before the Court in the above-entitled cause are the defendant's Motion to Dismiss, or in the Alternative, for Summary Judgment, filed October 29, 1996, and the plaintiff's Opposition thereto, filed November 5, 1996.[1] The plaintiff alleges racial harassment discrimination in violation of 42 U.S.C. § 1983 and Title VII of the Civil Rights Act of 1964 and retaliatory action against the plaintiff for having filed a discrimination complaint with the Equal Employment Opportunity Commission (the "EEOC") in violation of § 704(a) of Title VII.

Upon consideration of the party's pleadings, the entire record herein, the law applicable thereto, and for the reasons set forth below, the Court shall deny the defendant's Motion to Dismiss and shall grant the defendant's Motion for Summary Judgment.

## BACKGROUND

The plaintiff, Antonio Ridley, an African American, has been employed since 1990 by the District of Columbia Department of Corrections ("the Department") as a correctional officer at the Medium Security Facility, Lorton Complex, Lorton, Virginia. The plaintiff contends that he has been subjected to discrimination in the form of a hostile work environment caused by the repeated use of the racial epithet "nigger" by other African American co-workers when referring to fellow African Americans, including the plaintiff. He also alleges that he has been subjected to unlawful retaliation by the Department because it failed to give him advance approval of eight hours leave to meet with an official at the EEOC. The Department, instead, approved four hours in advance and the remaining four hours after he took the entire eight hours leave.

Plaintiff asserts that he has spoken to individual co-workers to inform them of his objections to the use of the term in question and has raised the issue at "Roll Call" before beginning two work shifts. The plaintiff continues to work at the facility and does not contend that the alleged discrimination has affected his career or the terms and conditions of his employment.

## DISCUSSION

### I. THE COURT SHALL DENY THE DEFENDANT'S MOTION TO DISMISS AS MOOT.

In its Motion to Dismiss, the defendant moves for dismissal of this case on the ground that, in his original Complaint, the plaintiff named as the sole defendant the District of Columbia Department of Corrections, which, the defendant argues, is not a suable entity. In response to this motion, the plaintiff amended his Complaint, as he is entitled to do as a matter of right pursuant to Rule 15 of the Federal Rules of Civil Procedure, removing the Department of Corrections as a party and adding the District of Columbia as the sole defendant.

The defendant's Motion to Dismiss has been rendered moot by the plaintiff's amend-

---

1. The defendant's Motion to Dismiss, or in the Alternative, for Summary Judgment incorporates by reference its Motion to Dismiss filed on October 25, 1996; and the plaintiff's Opposition, filed November 5, 1996, incorporates by reference its Opposition to the Defendant's original Motion to Dismiss. Arguments asserted in all four pleadings are addressed herein.

ment to his Complaint. Accordingly, the Court shall deny the defendant's Motion to Dismiss.

## II. THE COURT SHALL GRANT THE DEFENDANT'S MOTION FOR SUMMARY JUDGMENT.

In its Motion for Summary Judgment, the defendant moves for summary judgment on all counts on the grounds that, as a matter of law, the plaintiff: (1) cannot show that he has been the subject of racial discrimination or a hostile environment by the use of racial epithets by other African American co-workers, (2) did not notify the defendant of the alleged discrimination such that the defendant had an opportunity to investigate and remedy the alleged discrimination; (3) cannot prevail on his § 1983 claim because he has failed to show a policy of deliberate indifference to the plaintiff's alleged complaints; and (4) cannot show that he was subjected to retaliation by the failure to give him advance approval for eight rather than four hours leave to pick up a file regarding his EEOC complaint.

In order for the Court to grant summary judgment under Rule 56, the moving party must demonstrate that there is no genuine issue as to any material fact and that it is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2553–54, 91 L.Ed.2d 265 (1986). In considering the summary judgment issue, the Court must view all of the evidence in the light most favorable to the plaintiff. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). A careful analysis of the record in this case demonstrates that the defendant is entitled to summary judgment on the plaintiff's Title VII, § 1983, and retaliation claims.

### A. The Court Shall Grant Summary Judgment in Favor of the Defendant on the Plaintiff's Title VII Claim Because the Defendant Did not Know Nor Should Have Known of the Alleged Discrimination.

### 1. A claim of hostile environment racial harassment under Title VII.

Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–2(a)(1) (1988) makes it unlawful for an employer

(1) ... to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, ... or national origin.

A violation of Title VII occurs when the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of victim's employment and create an abusive working environment. *Harris v. Forklift Systems, Inc.,* 510 U.S. 17, 20–22, 114 S.Ct. 367, 370, 126 L.Ed.2d 295 (1993); *Batson v. Powell,* 912 F.Supp. 565, 575–76 n. 13 (D.D.C.1996). Merely isolated or incidental usages of racial epithets in casual conversation, however, will not constitute a Title VII violation. *See Batson,* 912 F.Supp. at 575–76 n. 13 (holding that few isolated incidents not actionable); *Friend v. Leidinger,* 446 F.Supp. 361, 382–83 (E.D.Va.1977) (isolated incidents of racial epithets not actionable), *aff'd,* 588 F.2d 61 (4th Cir.1978).

When a discriminatory hostile work environment is created by non-supervisory co-workers, the plaintiff also must show that the employer knew, or should have known, of the harassment and failed to take remedial action. Actual notice may be found if the employee complained of the harassment to the agency's personnel or equal employment office, or other management personnel. *See, e.g., Ellerth v. Burlington Industries, Inc.,* 912 F.Supp. 1101, 1118 (N.D.Ill.1996) (finding no actual knowledge of alleged discrimination when plaintiff failed to notify EEO officer or management personnel). Knowledge may also be imputed if the harassment is so severe or pervasive that "a reasonable employer would be inspired to investigate and discover the facts." 3 Lex K. Larson, Employment Discrimination § 46.07[4][a] (2d ed. 1996); *Spicer v. Commonwealth of Virginia,* 66 F.3d 705, 710 (4th Cir.1995).

The Court concludes that the defendant, whose Department of Corrections is the employer of the plaintiff, is not liable for the alleged conduct because, despite the availability of a detailed discrimination grievance

procedure, the plaintiff failed to notify the Department of the alleged discrimination in such a manner that the Department could investigate and remedy it. The Department, therefore, had no actual knowledge of the alleged conduct. The Court further concludes that knowledge of the alleged discrimination cannot be imputed on the Department because, when viewing the facts in a light most favorable to the plaintiff, the conduct was not so severe or pervasive that the Department should have known that investigation and remediation was necessary.

### 2. The defendant had no actual knowledge of the alleged discrimination.

■ The plaintiff alleges that the word "nigger" was used many times in his presence by African American "co-workers and officers of superior rank." Amended Complaint ¶¶ 5 & 6. Failing to allege that his supervisors engaged in the such conduct, the plaintiff must show that the defendant knew or should have known of it and failed to take remedial action in order to establish that the defendant is liable under Title VII.

The plaintiff claims that he asked the co-workers using the offensive language to stop such conduct. Amended Complaint ¶ 7. He further asserts that he brought the situation to the attention of superior officers twice at the morning roll calls and through Memoranda.[2] Plaintiff's Memorandum of Points and Authorities In Support of Plaintiff's Opposition to the Motion of Defendant to Dismiss or, in the Alternative, for Summary Judgment ("Plaintiff's Opposition Memorandum") 3, 5.

Assuming, *arguendo*, the foregoing facts are true, the Court still concludes that the plaintiff failed to put the defendant on notice as to the alleged conduct such that the defendant had actual knowledge of the discrimination and would have had an opportunity to investigate and remedy the alleged conduct, but failed to do so. The plaintiff does not allege that when the discrimination occurred he notified the Department's personnel office, any of the Department's fifty EEO Counselors or Department management.[3] In fact, at no time before the litigation presently before this Court did the plaintiff reveal to the defendant the names of the alleged offenders, or the times and dates of the discriminatory conduct, despite the fact that the plaintiff apparently had kept a log containing the dates of each alleged incident and the name and rank of the co-worker involved. *See* Unsworn Declaration Under Penalty of Perjury of Antonio Ridley ("Plaintiff's Declaration") ¶ 15.

(a) *The October 4, 1996 Memorandum to Director Moore did not confer actual knowledge of the alleged conduct upon the Department.*

The plaintiff did send a Memorandum to Margaret A. Moore, Director of the Department of Corrections on October 4, 1995, informing Ms. Moore that he intended to file a discrimination suit against the Department based on his allegations of harassment. Memorandum of Points and Authorities in Support of Defendant's Motion to Dismiss, or in the Alternative, for Summary Judgment ("Defendant's Memorandum") at 2. The Memorandum, however, contained no details about the alleged conduct and was sent over seven months after the last incident of discrimination alleged by the plaintiff.[4] *See*

---

2. Although the plaintiff does not specify to whom and when the Memoranda were sent, the Court concludes from the record that the plaintiff must be referring, at least in part, to the October 4, 1996 Memorandum to Director Moore, which is discussed below.

3. According to Declarations submitted to the Court by the defendant, the plaintiff informed one EEO Counselor, Ms. Luz Stephens, that he objected to the use of the term in question by fellow African American co-workers, but, after being told by Ms. Stephens that she could not handle his case because of a conflict of interest, the plaintiff failed to submit his charges with the

other EEO Counselors in his division whose names Ms. Stephens provided to the plaintiff. *See* Unsworn Declarations under Penalty of Perjury of Luz Stephens, Janice Montgomery, Gloria Powell, and Charles E. Watts.

The Court, however, need not rely on the foregoing undisputed testimony since the plaintiff does not allege that he filed any specific charges with a Department EEO official.

4. The plaintiff does not state in his Amended Complaint when the alleged conduct occurred. In his Unsworn Declaration Under Penalty of Perjury, submitted to the Court in preparation for trial in this matter, the plaintiff states that he

Memorandum from Antonio Ridley to Margaret A. Moore, Director, Department of Corrections (Oct. 4, 1996) (included in Plaintiff's Proposed Trial Materials). Furthermore, the Memorandum was sent approximately one week before the plaintiff filed charges with the EEOC.[5] Under these circumstances, the Court cannot find that the defendant had knowledge of the discrimination and failed to remedy it. Not only has the plaintiff failed to allege facts showing that the discrimination occurred after giving the Department such notice, but he also has failed to allege facts showing that the Department had an opportunity to remedy the matter but failed to do so once it had learned of the plaintiff's objections.

(b) *The discussions at Roll Call did not confer actual knowledge of the alleged conduct upon the Department.*

The Court also finds as a matter of law that the plaintiff's airing of his objections at two roll calls without any references to names, dates, times or places of the alleged conduct did not constitute notice to the Department such that it had actual knowledge of the discrimination and should have investigated the allegations. The plaintiff's objections, voiced in this informal setting without any reference to specific facts, did not put the Department on notice that it should pursue specific charges of discrimination. Furthermore, the plaintiff fails to allege that any *management-level* employees participated in the roll call meetings at issue.

(c) *In view of the plaintiff's failure to utilize the Department's EEO grievance procedure or take any other measures to notify management personnel, plaintiff has failed to raise a genuine issue of material fact as to whether the Department knew or should have known of the alleged conduct.*

In *Gary v. Long*, 59 F.3d 1391, 1398 (D.C.Cir.), *cert. denied*, —— U.S. ——, 116 S.Ct. 569, 133 L.Ed.2d 493 (1995), the United States Court of Appeals for this Circuit held that

[when] an employer has taken energetic measures to discourage ... harassment in the workplace and has established, advertised, and enforced effective procedures to deal with it when it does occur, it must be absolved of Title VII liability under a hostile work environment theory of ... harassment. That defense depends, of course, on the ability of the employer to establish that its employees could not reasonably have failed to know of those measures and that its grievance procedures were clearly "calculated to encourage victims of harassment to come forward."

*Id.* at 1398; *Bouton v. BMW of North America, Inc.*, 29 F.3d 103, 110 (3d Cir.1994) ("[W]e hold that an effective grievance procedure ... shields the employer from Title VII liability for hostile environment."); *Kauffman v. Allied Signal, Inc., Autolite Div.*, 970 F.2d 178, 184 (6th Cir.), *cert. denied*, 506 U.S. 1041, 113 S.Ct. 831, 121 L.Ed.2d 701 (1992) (stating that a grievance "policy itself, if effective, could serve as an insulation from liability"); *Butta–Brinkman v. FCA Int'l, Ltd.*, 1996 WL 633960 *4 (N.D.Ill. Oct. 29, 1996) (refusing to hold an employer liable because the plaintiff elected to file lawsuit and not cooperate with employer's subsequent attempts to investigate her claim).

In *Ellerth v. Burlington Industries, Inc.*, 912 F.Supp. 1101 (N.D.Ill.1996), the plaintiff acknowledged that she was aware that a policy against sexual harassment existed, but was not aware of whether it was being enforced, whether it was in effect throughout her employment or to whom she should complain. The Court held that in view of the plaintiff's acknowledgment of her deliberate failure to utilize the equal employment opportunity procedures outlined in the handbook, and her failure to take any other measures "to notify appropriate ... management personnel about her harassment," she failed to raise a genuine issue of material fact as to whether the employer knew or should have

has witnessed the use of the term "nigger" nearly one hundred times by African American co-workers from September, 1995 to February, 1996. *See* Plaintiff's Declaration ¶ 15.

5. The plaintiff filed his complaint with the EEOC on or about October 12, 1995. *See* Amended Complaint ¶ 10.

known about the alleged conduct. *Id.* at 1118.

In this case, it is undisputed that the Department has at least two detailed procedures for filing discrimination grievances. First, Article 10, § 3 of the union contract provides for a 40–day process to resolve grievances filed by union members employed by the Department, and Chapter 16 of the District Personnel Manual provides for disciplinary sanctions against union member employees. Second, under Department Order 3800.1C, the Department also has established under the auspices of its EEO Program a 21–day process in which the Department conducts an in-house investigation of any charges of employment discrimination filed with EEO Counselors or other officers.

In its Motion for Summary Judgment, the defendant asserts that the Department finds the term "nigger" "repugnant," "discourteous," and "ugly," and does not condone its use. This Court wholly agrees with this condemnation of such language. Defendant's Memorandum at 3. The plaintiff has asserted no allegations that raise questions as to the comprehensiveness or notoriety of the Department's EEO program or the discrimination grievance procedures.

It also is undisputed that the plaintiff did not file a grievance under either of the aforementioned procedures. Nor has the plaintiff alleged that he was not aware of the procedures. The facts as alleged by the plaintiff show that he simply decided to file suit rather than utilize the Department's internal grievance process.

Applying the rule in *Gary v. Long* to the foregoing undisputed facts, the Court concludes that the plaintiff fails to raise a genuine issue of material fact as to whether the Department had actual knowledge of alleged hostile environment racial harassment.

### 3. The defendant did not have constructive knowledge of the alleged discrimination.

 The Court further concludes that the alleged harassment was not so severe or pervasive that a reasonable employer would have been inspired to investigate and discover facts. Even assuming that the plaintiff

heard the term in question uttered by African American co-workers nearly 100 times over a six month period and that the use of the term by African American co-workers was pervasive in the Department, the Court does not conclude that such use necessarily created a hostile work environment so pervasive that the Department had constructive knowledge of the alleged discrimination. Notwithstanding the defendant's assertion that the Department finds the term in question "repugnant" and "discourteous," the Department need not have concluded that use of such term by African Americans speaking with other African Americans in daily conversation necessarily would create a racially hostile work environment, and needed to be investigated and remedied. To label *any and all* use of the term "nigger" among African Americans among themselves as creating a hostile environment is to ignore the reality of current African American culture, in which the term is often used without discriminatory content.

This is not to say that the term when used by African Americans among themselves is or should be acceptable to all African Americans or cannot create a racially hostile work environment. Only that the context in which the term is used by an African American with other African Americans determines whether such use creates a racially hostile work environment. Without knowledge of the context, the Department could not understand whether the term was used in a discriminatory fashion.

In short, because the term in question is often found unobjectionable by African Americans when used by fellow African Americans among themselves, the Court cannot conclude that pervasive use of the term by African Americans among themselves in an employment setting will confer constructive knowledge on the employer of hostile environment discrimination by co-workers. The logic of this conclusion is born out by the fact that despite his allegations of pervasive use of the term in question by African American employees of the Department, the plaintiff fails to point to any discrimination

charges similar to his own filed with the Department.[6]

By this opinion, the Court is in no way sanctioning or condoning the use of the term in question by African Americans or any other group. The Court condemns it and simply holds that the discrimination by co-workers alleged in this case must have or should have been known by the employer in order for the employer to be held liable under Title VII. Based on the facts as alleged and this record, the Court does not find that the employer in this case actually or constructively knew of the alleged discriminatory conduct. Therefore, the defendant shall not be held liable under Title VII for the allegedly discriminatory conduct of the plaintiff's co-workers.

### B. The Court Shall Grant Summary Judgment to the Defendant on the Plaintiff's § 1983 Claim Because the Plaintiff Has Failed to Allege Discriminatory Conduct Persistent or Widespread Enough to Constitute Official Department Policy.

■ Under Section 1983, the defendant cannot be held vicariously liable for the actions of its employees; "the doctrine [of respondeat superior] has no application in an action under 42 U.S.C. § 1983." *Hamilton,* 791 F.2d at 443 (quoting *Dean v. Gladney,* 621 F.2d 1331, 1336 (5th Cir.1980), *cert. denied sub nom. Dean v. County of Brazoria,* 450 U.S. 983, 101 S.Ct. 1521, 67 L.Ed.2d 819 (1981)). Rather, the United States Supreme Court, in *Monell v. New York City Dep't of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), established the rule that:

[l]ocal governing bodies ... can be sued directly under § 1983 for monetary, declaratory, or injunctive relief [only] where ... the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation or decision officially adopted and promulgated by that body's officers.

*Id.* at 690, 98 S.Ct. at 2035–36. Further, when that policy or custom is persistent or the result of a widespread discriminatory practice of a state official, permanent and well-settled, then a municipality is subject to § 1983 liability. *Id.* at 691, 98 S.Ct. at 2036.

■ As stated in *Carter v. District of Columbia,* 795 F.2d 116, 125–26 (D.C.Cir.1986), To succeed, a plaintiff must show a course deliberately pursued by the city, 'as opposed to an action taken unilaterally by a nonpolicy making municipal employee,' and 'an affirmative link between the [city's] policy and the particular constitutional violation alleged.' (citations omitted).

■ Here, the plaintiff has not alleged facts showing that there is an officially promulgated policy or custom of the Department that encourages the alleged discrimination. To the contrary, the Department has a detailed grievance procedure designed to address any charges of discrimination and over 50 EEO officers to address such claims. Instead, the Court can only conclude that the plaintiff simply ignored these administrative and remedial procedures, which is fatal to his claim here.

In his Opposition, the plaintiff argues that even if the Department did have regulations against racial discrimination of the nature alleged, such regulations were unenforced. Plaintiff's Opposition Memorandum at 5. The Court concludes, however, that the defendant has not alleged facts sufficient to show that the conduct existed to such a persistent, widespread degree that it could properly be deemed to represent official policy. The plaintiff's charges of African Americans discriminating against other African Americans on the basis of calling each other the repulsive term "nigger" is unquestionably a unique, rarely-seen claim. No facts have been alleged that this type of alleged discrimination is a persistent problem that has been brought frequently to the attention of the Department's management and ignored. Consequently, the court finds that the alleged discrimination is not the policy or prac-

---

**6.** Five Department co-workers have stated in Unsworn Declarations that they find the term in question offensive. None of these co-workers, however, state that the use of the term has subjected them to racial harassment discrimination. *See* Unsworn Declarations under Penalty of Perjury of Willie J. Flowers, Scott Einhorn, Darnella Burris, Frank Saldana, and Leo Hill, Jr.

tice of the Department, and, accordingly, the defendant is not liable under § 1983.

## C. The Court Shall Grant the Defendant Summary Judgment on the Plaintiff's Participatory Retaliation Claim Because Plaintiff Has Failed to Make Out a *Prima Facie* Claim.

Pursuant to § 704(a) of Title VII, it is unlawful to discriminate against any employee, *inter alia,* "because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding or hearing" under Title VII. 42 U.S.C. § 2000e–3(a). This is commonly referred to as participatory retaliation.

The plaintiff alleges that the Department retaliated against him in violation of § 704(a) for filing a complaint with the EEOC by refusing to grant him the full eight hours of administrative leave he requested for July 23, 1996. *See* Plaintiff's Opposition Memorandum at 6. He alleges that, instead, his request was only partially approved, as four of the eight hours requested were approved in advance. He further claims that upon informing his supervisor, Warden Elzie, that he intended to take the full eight hours of leave requested he was told by the Warden that he could be placed on absent without leave (AWOL) status for the four hours, *Id.,* as the four hours of leave granted was more than sufficient to allow the plaintiff to accomplish his alleged purpose, namely, to pick up his EEOC file.

 The defendant contends in his Motion for Summary Judgment, and the plaintiff concedes, that, although the plaintiff was listed as AWOL on the morning roster, he was not charged with AWOL on his official Time and Attendance slips. *See* Defendant's Memorandum at 20. No leave was charged against him nor was he docked any pay. *Id.* Thus, the defendant argues and the Court agrees that the plaintiff has suffered no adverse consequences with respect to the terms and conditions of his employment even though he did not report to duty on the morning of July 23, 1996.

 To make out a *prima facie* claim of participatory retaliation in violation of Title VII, the plaintiff must show (1) that he engaged in protected activity under Title VII; (2) that he was subject to adverse activity by his employer and (3) that a causal connection exists between the protected activity and the adverse action. *Batson,* 912 F.Supp. at 576.

The plaintiff has failed to show that he was subject to adverse action. While the plaintiff was listed on the morning work roster as "AWOL" by his immediate shift supervisor, he was not charged with AWOL on his official Time & Attendance record nor was his pay or personnel record affected in any way. Instead, the plaintiff was given an informal administrative leave for the entire eight hour tour of duty.

 In his Opposition, the plaintiff asserts that even though he was not docked any pay nor was charged with leave, his listing as "AWOL" on the morning roster constituted an adverse action. Plaintiff's Opposition Memorandum at 6. The Court disagrees with this conclusion because he has not suffered any adverse employment consequences for being AWOL. At the heart of any valid retaliation claim are allegations that the defendant sought to harm the plaintiff for engaging in activity protected under Title VII. *See Kinard v. National Supermarkets, Inc.,* 458 F.Supp. 106, 112 (S.D.Ala. 1978) (stating that employers must be prevented from interfering through economic or emotional sanctions with the filing of charges with the EEOC). The undisputed facts in this case do not support such a claim. To the contrary, the undisputed facts show that the Department took steps to avoid an adverse action against the plaintiff. Not only did the Department fail to penalize the plaintiff for being absent without approval, but it also did not charge the plaintiff with personal leave. Based on the above facts, as a matter of law, the plaintiff fails to show that adverse employment action occurred.

 Assuming, *arguendo,* that an adverse action did occur, the Court concludes that the plaintiff has failed to establish a causal connection between the protected activity and such adverse action. The defendant asserts in its Motion, and the plaintiff does not dispute, that leave was granted to

**342**

the plaintiff to pursue his EEOC claim on a number of occasions prior to the incident in question here. Thus, prior to July, 1996, there was no history of the kind of retaliation alleged.

When asking for eight hours on July 18, 1996, the plaintiff included a note from an EEOC officer that the plaintiff "had an appointment to pick up his file." *See* Defendant's Proposed Trial Exh. 10. According to the defendant, the Department determined on July 22nd that only four hours of administrative leave could be granted, based on "inadequate staffing of correctional officers at Medium Security, the need to limit overtime, and in light of [the plaintiff's] submission that leave was needed only to 'pick up his files.' " Defendant's Memorandum at 18. The defendant contends that, in light of the plaintiff's assertion that he needed leave simply to pick up his files, the partial grant of leave was an acceptable compromise of institutional and personal needs. *Id.*

Moreover, even assuming, *arguendo,* that the plaintiff has made out a *prima facie* case, the defendant has provided a legitimate, non-discriminatory reason for the denial of leave, and the plaintiff has failed to prove by a preponderance of the evidence that the defendant's reasons are merely pretextual. *St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 506–08, 113 S.Ct. 2742, 2747, 125 L.Ed.2d 407 (1993); *Fischbach v. D.C. Dep't of Corrections,* 86 F.3d 1180, 1180, 1182 (D.C.Cir. 1996); *Batson,* 912 F.Supp. at 577.

Here, the plaintiff has not alleged facts that cast sufficient doubt on the veracity of the defendant's reasons. The plaintiff only argues that the Department's knowledge as to the purpose of the plaintiff's appointment along with the late denial of his full request is sufficient evidence to conclude that the reasons offered for denying the leave are a pretext. This is incorrect as a matter of law. *See Fischbach,* 86 F.3d at 1183 ("It is not enough for the plaintiff to show that a reason given for a job action is not just, or fair, or sensible. He must show that the explanation given is a phony reason.") (quoting *Pignato v. American Trans Air, Inc.,* 14 F.3d 342, 349 (7th Cir.1994)). The Court concludes that the plaintiff has not

met his burden of proof on this record to overcome summary judgment in favor of the defendant.

### CONCLUSION

For the foregoing reasons, the Court shall deny the defendant's Motion to Dismiss as moot, and shall grant the defendant's Motion for Summary Judgment with respect to all counts. The Court shall issue an Order of even date herewith consistent with the foregoing Memorandum Opinion.