

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

11-14-2008

# Krishnaswamy Sampath v. Concurrent Tech Corp

Precedential or Non-Precedential: Non-Precedential

Docket No. 08-2370

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"Krishnaswamy Sampath v. Concurrent Tech Corp" (2008). *2008 Decisions.* Paper 229.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/229

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 08-2370
_____

KRISHNASWAMY SAMPATH,
Appellant

v.

CONCURRENT TECHNOLOGIES CORPORATION

_____

Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Civil No. 03-cv-00264)
District Judge:  Honorable Kim R. Gibson

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
November 13, 2008

Before: RENDELL, FUENTES and NYGAARD, <u>Circuit Judges</u>

(Filed: November 14, 2008)
_____

OPINION OF THE COURT
_____

PER CURIAM

     Krishnaswamy Sampath appeals from an order of the United States District Court

for the Western District of Pennsylvania granting summary judgment to his former

employer, defendant Concurrent Technologies Corporation ("CTC").

Sampath filed his first complaint against CTC in the District Court, on June 17, 2002. In that complaint, Sampath asserted claims of retaliation and national origin discrimination in pay and opportunities for advancement, in violation of Title VII of the Civil Rights Act of 1964. Sampath sought to administratively close the complaint on June 18, 2003, while he awaited the results of the EEOC's investigation. Eight months later, CTC terminated Sampath's employment. On December 5, 2003, Sampath filed a new complaint alleging that CTC had terminated his employment in retaliation for his having filed the first complaint.

The parties cross-moved for summary judgment. In his brief, Sampath requested the District Court to consider the claims he had asserted in his first complaint. The District Court did so, but determined that Sampath had not demonstrated a genuine issue of material fact as to any of his claims in either complaint. Accordingly, the District Court gave notice of its intention to grant summary judgment in favor of CTC on all claims, and Sampath filed an opposition. After considering Sampath's opposition, the District Court granted summary judgment to CTC on all claims. Sampath appealed.

We have jurisdiction under 28 U.S.C. § 1291. We review the grant of summary judgment de novo Startzell v. City of Phila., 533 F.3d 183, 192 (3d Cir. 2008). We will affirm the grant of summary judgment if, viewing the facts most favorably to the nonmoving party, we determine that there are no genuine issues of material fact for trial. Id.

The District Court laid out the facts extensively, and, therefore, we will discuss them only briefly here.[1]  CTC is a nonprofit research and development organization located in Johnstown, Pennsylvania, that serves federal and state government agencies. Sampath, a man of Indian descent, has a Ph.D. from Ohio State University and an MBA degree from Cornell.  (Compl., ¶ 5; Pl.'s Mot. Summ. J., Ex. A.)  Sampath  joined CTC in 1991.  (Def's. Mot. Summ. J. Ex. A, 18:15 (Sampath dep.).)  Over the course of many years with the company, Sampath received several negative performance reviews, in which his reviewers acknowledged Sampath's advanced technical capabilities, but accused him of "insubordination" and other perceived behavior problems.  (See e.g., id., at 26:12-18, 34:20-25, 49:1-8.)  Sampath disputed some of these reviews with written rebuttals.  (Id. at 27:18-25-28:1.)

In 1997, CTC's chief environmental scientist nominated Sampath for "Patent Agent Training and Registration," indicating that he was impressed with Sampath's skills and "recommend[ed] him without reservation."  (Pl.'s Mot. Summ. J., Ex. H.)  Sampath received similarly positive feedback from clients such as the U.S. Navy, which indicated that Sampath had exceeded expectations in technical performance, understanding the client's environment, client service and responsiveness, professionalism, competence, team communications, and overall performance.  (Pl.'s Opp'n, Ex. PX # 3.)  In 1998,

---

[1]We commend the District Court for its careful review of the voluminous record in this case.

Sampath began a one-year MBA program at Cornell, and CTC declined Sampath's request to pay his tuition. (Def.'s Mot. Summ. J., Ex. A, 44:1-6.) In 2000, Sampath received a favorable review that noted, "I believe that past misunderstandings have marred his reputation. If specific direction is agreed to by all parties involved . . . [Sampath] can be one of the best resources CTC has." (Pl.'s Mot. Summ. J., Ex. R.) In September, 2001, CTC issued a Notification of Insubordinate Behavior to Sampath in response to his refusal to assign patent rights to CTC pursuant to its intellectual property policy. (Def.'s Mot. Summ. J., Ex. A, 78-80.)[2]

Sampath filed his initial lawsuit in 2001. He alleged that CTC management denied him professional opportunities, pay raises and promotions on the basis of his race and/or national origin. In 2002, after he filed his initial lawsuit against CTC, Sampath received an out-of-cycle review. In that review, Sampath's supervisor noted that Sampath had refused to work on any cost analysis projects until he received additional compensation from CTC for the utilization of his MBA skills. (Def.'s Mot. Summ. J., Ex. A, 183:5-16.) CTC placed Sampath on probationary status on February 20, 2003, and provided sixteen performance goals in the form of a performance improvement plan. (Def.'s Mot. Summ. J., Ex. 84.) Sampath refused to abide by the plan. (Id., Ex. A, at 183:17-25.) Shortly

---

[2]Sampath argues that he did not "refuse" to assign patent rights, but that he insisted that CTC compensate him before assigning such rights. He testified at his deposition, however, that he was aware that CTC's policy required that intellectual property developed by CTC employees was the property of CTC. He also testified that, when presented with paperwork to assign patent rights, he did not sign. Id.

thereafter, Sampath added a "claimer" to the bottom of his email, notifying email recipients that he was providing his "self-financed" MBA skills to CTC "pro bono." (Id. at 186.) On February 24, 2003, CTC terminated Sampath's employment.

The District Court applied the burden-shifting framework established by McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), and determined that Sampath had not stated a prima facie case of discrimination with respect to pay or promotion.[3] The District Court further determined that, even if he had, CTC had proffered legitimate nondiscriminatory reasons to explain the incidents Sampath alleged, and Sampath had failed to show that those reasons were pretextual.[4] The District Court also granted summary judgment on Sampath's retaliation claims, determining that Sampath had not adduced facts from which a jury could find that his termination or any adverse actions were causally related to his earlier lawsuit or any other protected activity.

On appeal, Sampath asserts principally two arguments.[5] First, Sampath contends

[3]When asserting a claim of failure to promote, a plaintiff must show that the employer denied him the promotion and awarded it to someone else. See Fuentes v. Perskie, 32 F.3d 759, 763 (3d Cir. 1994). Sampath made no such allegation and offered no evidence in support of this aspect of the prima facie case.

[4]A plaintiff may show that the defendant's stated reasons are pretext for discrimination by demonstrating "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions . . . " with respect to the defendant's stated reasons, or by proffering "sufficient evidence from which a factfinder could reasonably conclude that an illegitimate factor more likely than not was a motivating or determinative cause of the adverse employment decision . . . ." Fuentes, 32 F.3d at 765.

[5]In his informal brief, Sampath lists 28 items in response to the prompt, "What action do you want the Court of Appeals to take in this case?" Many of his requests are

5

that the District Court ignored the cumulative effect of CTC's actions against him. Sampath notes that the District Court identified eight incidents of alleged retaliation, but contends that the District Court assessed them in isolation, ignoring their "cumulative effect." We have reviewed the record and find no error in the District Court's analysis of these incidents, or their significance as a whole. Sampath contends that the incidents, consisting mostly of negative performance reviews, amount to a pattern of discrimination and retaliation based on race and national origin, but he has not proffered evidence in support of that assertion.

Second, Sampath asserts that the District Court improperly made credibility determinations by considering Sampath's performance reviews. Sampath objects on the basis that his reviews are merely a collection of unverified perceptions. As a general matter, a court may not second-guess an employer's evaluation of its employee. See Fischbach v. Dist. of Columbia Dep't of Corr., 86 F.3d 1180, 1183 (D.C. Cir. 1996); Ezold v. Wolf, Block, Schorr and Solis-Cohen, 983 F.2d 509, 547 n.38 (3d Cir. 1992) (allowing law firm to rely on its own subjective assessment of employee's legal ability in

---

redundant or overlapping. Sampath does not specifically challenge the District Court's resolution of any of his claims.

Sampath references five orders in his Notice of Appeal, but he devotes his brief entirely to the District Court order granting summary judgment to CTC, and therefore, we will address only that order. See Anspach v. City of Phila., 503 F.3d 256, 259 n.1 (3d Cir. 2007) (citing Laborers' Int'l Union of N. Am. v. Foster Wheeler Energy Corp., 26 F.3d 375, 398 (3d Cir. 1994)) (failure to present an argument in one's opening brief results in waiver).

6

making partnership decision, and permitting the law firm to err in that assessment, as long as error was not based on unlawful discrimination). Whether an employer has misjudged an employee's performance, however, is relevant to the question of pretext. Fischbach, 86 F.3d at 1183. Although the record contains evidence indicating that several clients and colleagues believed Sampath had tremendous technical capabilities, the record does not indicate that Sampath received comparable praise for his personal qualities. Id. In other words, Sampath's positive reviews are consistent with the negative assessments of his personality traits, and the former do not undermine the latter. Accordingly, we believe that Sampath has not shown that his negative performance reviews were pretext for prejudice.

As the District Court observed, Title VII does not "mandate a happy workplace." Jensen v. Potter, 435 F.3d 444, 451 (3d Cir. 2006), overruled in part on other grounds by Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53 (2006). It outlaws only certain bases of discrimination, two of which are relevant to this case: race and national origin. Sampath argues that he experienced unfair treatment at the workplace, but he has offered no evidence to suggest that his experiences at CTC resulted from race or national origin discrimination.[6]

---

[6]During Sampath's deposition, for example, counsel for CTC asked Sampath whether he believed that certain CTC managers had discriminated against him, and Sampath answered yes; when questioned as to the basis on which they discriminated, Sampath first offered race or religion, and then said, "It could be anything." (Def.'s Mot. Summ. J. Ex. A, 30:19-22.) This further supports the District Court's determination that Sampath was

For the above-stated reasons, we will affirm the order of the District Court.

---

complaining of generalized unfairness as well as racial prejudice and national origin discrimination.

Sampath also incorrectly asserts in his reply brief that CTC carried the burden to show "there was no deceptive smoke and mirrors scheme, and the policies, procedures and practices were not biased against Sampath . . . and that his actual (not perceived) behavior was indeed the legitimate reason." (Pl's Informal Reply Br., at 12) (emphasis in original). As explained supra, under McDonnell Douglas, once the plaintiff makes a prima facie case, the burden shifts to the defendant to proffer a nondiscriminatory reason for its actions. 411 U.S. at 802-03. Once the defendant proffers such a reason, the burden shifts back to the plaintiff to show that the reason is pretextual. Id. Under this framework, CTC had no burden to disprove pretext.