# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

**No. 22-5310**

**September Term, 2023**

FILED ON: JUNE 28, 2024

TAMMY HARTZLER,
>                APPELLANT

v.

ALEJANDRO MAYORKAS, ET AL.,
>                APPELLEES

Appeal from the United States District Court
for the District of Columbia
(No. 1:20-cv-03802)

Before: SRINIVASAN, *Chief Judge*, CHILDS and GARCIA, *Circuit Judges*.

## <u>J U D G M E N T</u>

This appeal was considered on the record from the United States District Court for the District of Columbia and on the briefs and oral argument of the parties. The panel has accorded the issues full consideration and has determined that they do not warrant a published opinion. *See* D.C. Cir. R. 36(d). It is hereby

**ORDERED AND ADJUDGED** that the judgment of the district court be **AFFIRMED**.

Tammy Hartzler brought a suit alleging that the Federal Emergency Management Agency (FEMA), her former employer, discriminated against her on the basis of her disability, denied her reasonable accommodations for her disability, and retaliated against her for protected activity, all in violation of federal law. The district court granted summary judgment to the government on all claims. We affirm.

I.

A.

Hartzler began working at FEMA in 2015. She suffers from chronic thoracic pain and back issues. Hartzler requested and was granted a reasonable accommodation for her disability from FEMA in the form of an ergonomic chair and desk. She asserts that FEMA failed to provide the

necessary accommodation when deploying her to alternate FEMA locations.

In March 2019, Hartzler's supervisor, Joe Burchette, placed her on a Performance Improvement Plan (PIP) after determining that she had not met FEMA's core competencies of "Teamwork and Cooperation" and "Communication." After the PIP period ended, Burchette determined that Hartzler had failed the PIP as to both core competencies. Burchette notified Hartzler that he was recommending her removal and withholding of her planned pay increase.

Kim Kadesch, the Director of FEMA's Office of National Capitol Region Coordination, served as the ultimate decisionmaker on Hartzler's continued employment at FEMA. Kadesch affirmed Burchette's recommendation "based on [Hartzler's] failure to successfully improve [her] performance during the" PIP. Memorandum from Kim Kadesch, Director, Office of National Capital Region Coordination, FEMA, to Tammy Hartzler (Sept. 27, 2019), J.A. 233. In September 2019, FEMA terminated Hartzler's employment.

B.

In December 2020, Hartzler filed this lawsuit in the district court, raising seventeen counts under the Rehabilitation Act, Title VII, and the Family and Medical Leave Act (FMLA). She abandons several of her claims on appeal, and her remaining claims are as follows: (1) failure-to-accommodate claims related to her temporary deployments to Fort A.P Hill and Anniston, Alabama (Count 1); (2) discrimination and retaliation claims related to her placement on the PIP (Counts 4, 9, and 14); and (3) discrimination and retaliation claims related to her failure of the PIP (Counts 3, 6, 8, 11, 13, and 16).

The parties consented to adjudication by a magistrate judge, who granted summary judgment to the government on all counts. Hartzler now appeals.

II.

A.

An employee protected by the Rehabilitation Act is entitled to her employer's reasonable accommodation of her disability. To survive summary judgment when bringing a failure-to-accommodate claim, an employee must "come forward with sufficient evidence to allow a reasonable jury to conclude that (i) she was disabled within the meaning of the Rehabilitation Act; (ii) her employer had notice of her disability; (iii) she was able to perform the essential functions of her job with or without reasonable accommodation; and (iv) her employer denied her request for a reasonable accommodation of that disability." *Solomon v. Vilsack*, 763 F.3d 1, 9 (D.C. Cir. 2014) (internal citations omitted). An employer may "initiate an informal, interactive process with the individual with a disability" to "identify the precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations." 29 C.F.R. § 1630.2(*o*)(3). To demonstrate that the employer denied a request for an accommodation, an employee can show that the agency "in fact ended the interactive process or that it participated in the process in bad faith." *Ward v. McDonald*, 762 F.3d 24, 32 (D.C. Cir. 2014).

2

In this appeal, Hartzler continues to press two of her failure-to-accommodate claims: one related to a one-day deployment to Fort A.P. Hill, and the other related to a five-day deployment to Anniston, Alabama. As to both of those claims, FEMA contends that it did not deny Hartzler's requests for a reasonable accommodation. We agree.

With respect to the one-day deployment to Fort A.P. Hill, no reasonable jury could conclude that FEMA denied Hartzler's request for sedentary work or ergonomic equipment. Within twenty-four hours of receiving documentation of Hartzler's need for accommodation, FEMA moved Hartzler to sedentary work. That one-day period did not constitute a denial of a reasonable accommodation request. *See id.* at 35 n.5. Nor did FEMA's request for documentation amount to a constructive denial of her request. *Id.* at 31–32. Hartzler argues that Burchette demonstrated bad faith by making a joke when discussing her deployment, a joke she alleges demonstrates discriminatory animus. But no reasonable jury could conclude that the joke evidenced bad faith by FEMA in the interactive process associated with providing an accommodation.

Similarly, no reasonable jury could conclude that FEMA's five-day delay in providing ergonomic equipment during Hartzler's training deployment to Anniston, Alabama, amounted to the denial of a reasonable accommodation. FEMA participated in the interactive process by making reasonable efforts to provide Hartzler the ergonomic equipment, including proactively reaching out to determine her needs and ordering everything by the necessary shipping date. While it is unclear from the record why Hartzler's receipt of the equipment was delayed, Hartzler has provided no evidence that would allow inferring that the delay was anything but accidental. That Burchette took several days to respond to an email concerning Hartzler's request does not change that conclusion, especially because it is clear from the record that Burchette was attempting to help Hartzler receive the equipment promptly.

B.

We turn next to Hartzler's discrimination and retaliation claims related to her placement on the PIP and her failure to satisfy the PIP. Because FEMA offers legitimate nondiscriminatory reasons for placing her on the PIP and determining that she failed to satisfy it, Hartzler, to survive summary judgment, must establish that a reasonable jury could disbelieve FEMA's asserted reasons and find that FEMA discriminated against her based on her disability or retaliated against her for protected activity. *See Brady v. Off. of Sergeant at Arms*, 520 F.3d 490, 494 (D.C. Cir. 2008). When evaluating whether an employer's asserted nondiscriminatory reasons are pretext for discrimination or retaliation, the issue is not "the correctness or desirability of [the] reasons offered . . . [but] whether the employer honestly believes in the reasons it offers." *Fischbach v. D.C. Dep't of Corr.*, 86 F.3d 1180, 1183 (D.C. Cir. 1996) (alterations in original). "If the employer's stated belief about the underlying facts is reasonable in light of the evidence, [ ] there ordinarily is no basis for permitting a jury to conclude that the employer is lying about the underlying facts." *Brady*, 520 F.3d at 495.

1.

We first consider the institution of the PIP. Burchette gave five reasons for placing Hartzler

on the PIP. For the core competency of "Communication," Burchette believed Hartzler's performance was unacceptable because (i) Hartzler abruptly left a 2018 detail without communication to her supervisor, and (ii) Hartzler sent an unprofessional email to and spoke disparagingly about her cadre manager. As evidence of Hartzler's unacceptable performance in connection with the core competency of "Teamwork and Cooperation," Burchette pointed to (i) Hartzler's practice of unnecessarily copying FEMA Deputy Director Kenneth Wall and Kadesch on emails; (ii) a situation in which, after Hartzler failed to follow up with team members despite being requested to do so by the leader of her team, Eric Soucie, the roll-out of a Standard Operating Procedure (SOP) became delayed beyond the original deadline; and (iii) an incident in which Hartzler left an unmarked envelope on Soucie's desk and failed to explain the actions she needed from Soucie or ask for help from Burchette.

Hartzler argues that a reasonable jury could find that those reasons were pretext for discrimination and retaliation. We disagree.

*First*, as to her departure from her 2018 detail, Hartzler argues that Burchette could not honestly believe that Hartzler abruptly left the detail without communication. She emphasizes that she stayed past the official end date of the detail and copied Burchette on her communication ending the detail, and that Burchette rated her performance as "acceptable" in the subsequent quarterly performance review. Hartzler, however, ignores that she had already indicated in emails that she would stay longer. And when she let her detail supervisor know she would be leaving by the end of the same week, he responded that her departure was "unexpected" and noted that he wished she had communicated better. Burchette was copied on that email and received another email from the supervisor indicating that Hartzler had left the detail without prior notice. Burchette also counseled Hartzler about this incident in her quarterly review.

*Second*, Hartzler contends that Burchette did not honestly believe that Hartzler acted unprofessionally in her communications to and about her cadre manager because Burchette failed to counsel Hartzler about the incident before placing her on the PIP and did not remember the details during his deposition. But the delay in counseling is not enough to draw an inference that Burchette disbelieved Hartzler had acted unprofessionally. And Burchette's failure to recall specific details in his deposition does not itself suffice to create a genuine issue of material fact. *See Hairston v. Vance-Cooks*, 773 F.3d 266, 272–73 (D.C. Cir. 2014).

*Third*, Hartzler asserts that Burchette could not have reasonably believed that she communicated inappropriately by copying Kadesch and Wall on emails because Kadesch never told Hartzler to stop doing so and Burchette did not raise the issue until after Hartzler filed her first Equal Employment Opportunity complaint. But while Kadesch never asked Hartzler to stop copying him on emails, he did testify that he asked Burchette to counsel Hartzler on the issue, which Burchette did. Hartzler has failed to "defeat the presumption that the[se] proffered explanations are genuine." *Woodruff v. Peters*, 482 F.3d 521, 530 (D.C. Cir. 2007).

*Fourth*, Hartzler argues that Burchette and Soucie produced inconsistent testimony about whom she should have communicated with to prevent the delay of the SOP's issuance, which Hartzler considers evidence of pretext. In fact, however, Burchette and Soucie both testified that Hartzler should have reached out to the same position at FEMA, even if their testimony exhibited

4

some confusion about which employee in fact held that position at the relevant time. That confusion is not significant enough to create a genuine issue of material fact.

*Fifth*, Hartzler insists that a reasonable jury could conclude that Burchette did not believe that Hartzler erred by leaving an unmarked envelope on Soucie's desk with no communication to Soucie and Burchette about why she was doing so. She maintains that she did not know Soucie was away from his desk and that Burchette falsely asserted that the envelope concerned a time-sensitive matter. But what matters is what *Burchette* believed, not what Hartzler did. And Hartzler provides no evidence that Burchette did not consider the matter in question to be time sensitive or that he did not believe it was inappropriate for Hartzler to leave the envelope on Soucie's desk without explanation.

Because Hartzler has failed to raise a genuine issue of material fact as to Burchette's honest and reasonable beliefs in the reasons given for her PIP placement, we affirm the district court's grant of summary judgment on Counts 4, 9, and 14.

2.

Burchette determined that Hartzler failed both core competencies on which her PIP was focused. Because the PIP was clear that failure of one of the core competencies afforded grounds for removal, we may affirm the district court's grant of summary judgment based on either failure. And because we determine that no reasonable jury could find that Burchette did not honestly and reasonably believe the reasons that Hartzler failed the PIP as to "Teamwork and Cooperation," we need not consider the reasons given for failure as to "Communication."

Hartzler could fail "Teamwork and Cooperation" only once each month to stay within bounds of the PIP. We conclude that no reasonable jury could find that Burchette did not honestly and reasonably believe Hartzler failed the PIP based on two instances of failure in June 2019: (i) an email from her asking about the "Eagle Horizon 2019 Quick Look Report," which Burchette said did not provide necessary context, and (ii) an incident in which Hartzler said she did not have "Adobe Connect" host rights at a meeting in which she needed to use those rights, and Soucie later concluded that she had lied about whether she possessed host rights. Hartzler has not demonstrated that those incidents failed to provide a sufficient basis for Burchette's conclusion that she fell short of the PIP's requirements.

*First*, Hartzler argues that her June 4, 2019, email about the Eagle Horizon 2019 Quick Look Report satisfied the PIP requirements. But her email was not so clear as to cast doubt on Burchette's contrary belief, a belief borne out by Soucie's contemporaneous email asking for more information. We thus find insufficient reason to doubt that Hartzler's email was a failure in "Teamwork and Cooperation" based on the lack of clear communication about what she needed.

*Second*, while Hartzler acknowledges that she told Soucie she did not have Adobe Connect host rights when she in fact did, she points to the fact that she had a concussion at the time of the incident as evidence that Burchette could not have reasonably and honestly believed she was being intentionally uncooperative. But Burchette's deposition testimony about this event, in which he acknowledged knowing about her concussion, does not open the door to the inference that he knew

5

or should have known that the concussion could cause Hartzler to forget about her host rights. Burchette acknowledges that Hartzler had asked for a reasonable accommodation for her concussion, but the accommodation was for brain rest and limited computer time. And he points to Hartzler's practice of using those host rights at past meetings as evidence that he believed she knew that she had host rights. Also, Hartzler's recollections of the meeting in her deposition testimony and in contemporaneous emails do not indicate that she told Burchette or Soucie that she forgot about her host rights due to her concussion. Hartzler thus has failed to create grounds for an inference that Burchette did not honestly and reasonably believe she was being intentionally uncooperative.

For those reasons, we affirm the grant of summary judgment to the government as to Counts 3, 6, 8, 11, 13, and 16.

\*　　\*　　\*

Pursuant to D.C. Circuit Rule 36, this disposition will not be published. The Clerk is directed to withhold issuance of the mandate until seven days after resolution of any timely petition for rehearing or rehearing en banc. *See* Fed. R. App. P. 41(b); D.C. Cir. R. 41.

**Per Curiam**

**FOR THE COURT:**
Mark J. Langer, Clerk

BY:　/s/
　　　Daniel J. Reidy
　　　Deputy Clerk