**Fanya VASILEVSKY, Plaintiff,**

v.

**Janet RENO, Attorney General of the United States, in her official capacity, Defendant.**

**Civil Action No. 97–2916(RMU).**

United States District Court, District of Columbia.

Dec. 21, 1998.

Fanya Vasilevsky, Potomac, MD, pro se.

Doris D. Coles–Huff, U.S. Attorney's Office, Washington, DC, for Defendant.

## MEMORANDUM OPINION
### GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

URBINA, District Judge.

## I. INTRODUCTION

This matter is before the court upon the plaintiff's motion for summary judgment, the defendant's motion for summary judgment and the respective oppositions and replies filed thereto. Fanya Vasilevsky ("the plaintiff") claims that she was denied a position within the Immigration and Naturalization Service ("INS") because of her age in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. Section 633a *et seq.* The plaintiff's amended complaint also includes a claim of retaliation. The INS is an agency within the Department of Justice. The Honorable Janet Reno ("the defendant") argues that the plaintiff's age had no bearing on the decision not to award her one of the positions in question. Rather, the defendant states that the positions in question were filled by other, better qualified candidates. After reviewing all of the submissions as well as the relevant law, the court concludes that the plaintiff has not carried her burden of offering evidence to show that the defendant's proffered reasons for not granting her the promotion were pretextual. Furthermore, the court concludes that the plaintiff has not made a prima facie showing of retaliation. Accordingly, the court will enter judgment in favor of the defendant.

## II. BACKGROUND

In April 1997, the INS posted through a vacancy announcement an opening for an immigration officer in Moscow, Russia. The plaintiff applied for this position but was not selected. Instead, a fifty-year-old female candidate was selected. In July, 1997, the INS posted another vacancy announcement noting multiple openings in Moscow, Russia for immigration officers. The plaintiff again submitted her application for consideration. The list of qualified candidates for these positions was reduced to six including the plaintiff. Mr. Joseph Cuddihy, a District Director in the INS Office of International Affairs, was the official charged with making the final selections for the position. Mr. Cuddihy selected three candidates to fill the three open positions. One of the selected candidates declined to accept the position and so, consequently, one of the remaining

three prospective applicants was selected as a replacement. The plaintiff was not selected. All of the successful candidates were under forty years of age, while the plaintiff and the other unsuccessful candidate were over forty years of age. The plaintiff filed an EEO complaint claiming age discrimination within the INS, and she received her right to sue notice on October 7, 1997. Subsequently, the plaintiff filed the instant action contesting the INS's failure to select her for any of the openings included in the July 1997 vacancy announcement.

## III. DISCUSSION

### A. Summary Judgment

Both parties in this matter have submitted motions for summary judgment. Federal Rule of Civil Procedure 56(c) provides that, "summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions of file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Rule 56(c) mandates summary judgment if a party fails to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. See Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).[1] In such a situation, there is no genuine issue of material fact because there is a failure of proof concerning an essential element of the non-moving party's case that renders all other facts immaterial. See id. at 322–23, 106 S.Ct. 2548. The moving party meets its burden if it illustrates that there is an absence of evidence to support the non-moving party's case. See id. at 325, 106 S.Ct. 2548. The party opposing a motion for summary judgment may not rely on mere allegations or denials, but must set forth specific facts showing that there is a genuine issue for trial. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Where more than one party moves for summary judgment, each party must carry its own burden of proof. United States Dept. of Justice v. Reporters Comm. for Freedom of the Press, 489 U.S. 749, 755, 109 S.Ct. 1468, 103 L.Ed.2d 774 (1989).

Credibility determinations, the weighing of the evidence and the drawing of legitimate inferences from the facts are jury functions. See Anderson, 477 U.S. at 249, 106 S.Ct. 2505. The court must accept the evidence of the nonmovant as true, and all justifiable inferences are to be drawn in his favor. See id. Moreover, because discriminatory intent and proof of disparate treatment are difficult to establish, courts must view summary judgment with special caution and therefore must be particularly careful to view all of the evidence in the light most favorable to the plaintiff. See Ross v. Runyon, 859 F.Supp. 15, 21–22 (D.D.C.1994). If a reasonable fact finder could infer discrimination based on the evidence submitted, then summary judgment is inappropriate. See Hayes v. Shalala, 902 F.Supp. 259, 264 (D.D.C.1995). Because there is no genuine issue as to any material fact in this case, summary judgment is appropriate.

### B. Analysis

#### 1. Legal Standard—Discrimination

The Supreme Court has set forth a three step analysis to allocate the burden of proof in a Title VII case alleging discriminatory treatment. See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). This analysis has been adopted and applied in ADEA cases as well. See Cuddy v. Carmen, 762 F.2d 119, 122 (D.C.Cir.1985); Ware v. Howard University, 816 F.Supp. 737, 749–50 (D.D.C.1993). The first step in the analysis requires the plaintiff to show by a preponderance of the evidence that a prima facie case of discrimination exists. See McDonnell, 411 U.S. at 802, 93 S.Ct. 1817. Second,

---

1. In *Celotex*, the Supreme Court stated that summary judgment is "properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.' " *Celotex*, 477 U.S. at 322, 106 S.Ct. 2548.

if the plaintiff succeeds in presenting a prima facie case, then the burden shifts to the defendant who must articulate some legitimate, non-discriminatory reason for the employee's treatment. *See id.* Lastly, should the defendant meet this burden, the plaintiff must then show by a preponderance of the evidence that defendant's non-discriminatory reasons for not selecting plaintiff for the position were not the true reasons, but rather a pretext for discrimination. *See McDonnell,* 411 U.S. at 802, 93 S.Ct. 1817.

### a. Prima Facie Case

In order to make out a prima facie case of age discrimination, the plaintiff must show that she (1) belongs to the statutorily protected age group (40–70); (2) was qualified for the position; (3) was terminated or not selected for a position; and (4) was disadvantaged in favor of a younger person. *See Coburn v. Pan American World Airways, Inc.,* 711 F.2d 339, 342 (D.C.Cir.), *cert. denied,* 464 U.S. 994, 104 S.Ct. 488, 78 L.Ed.2d 683 (1983). In the present case, the parties agree that plaintiff has made out a prima facie case of discrimination. There is no dispute that plaintiff falls within the statutorily protected age group; was qualified for the position; was not selected for the position; and that she was disadvantaged in that younger persons were selected for the position. Accordingly, the court will examine whether the defendant has proffered some non-discriminatory reason for plaintiff's non-selection to the position in question.

### b. Non–Discriminatory Reasons

After the plaintiff has made out a prima facie case of discrimination, the burden of production shifts to the defendant to offer some evidence of a non-discriminatory reason for its decision not to select the plaintiff for the position in question. Importantly, this "minimal" burden is one of production rather than persuasion and requires only that the defendant put forth evidence that is legally sufficient "to justify a judgment for the defendant." *See Cuddy,* 762 F.2d at 122–23.

In the present matter defendant has put forward substantial evidence of a non-discriminatory motive for plaintiff not being selected. First, the court considered the deposition testimony of Mr. Joseph Cuddihy. (Pl.'s Reply to Def.'s Opp'n to Pl.'s Mot. for Summ. J. (hereinafter referred to as "Cuddihy Depo."), Ex. 8). Beginning in 1995, Mr. Cuddihy was a District Director in the INS Office of International Affairs located in Rome. (Cuddihy Depo. at 7.) Mr. Cuddihy was the selecting official responsible for the positions that are at issue in this case. Mr. Cuddihy states that, during the time frame that he was considering applications for these positions, he anticipated that the needs of the Moscow office would be changing in the near future. (Cuddihy Depo at 54–56.) Specifically, Mr. Cuddihy stated that immigration officers in the Moscow station would be engaged in more enforcement and investigatory work than had previously been undertaken. (Cuddihy Depo. at 66–70.) He also asserts that, in the summer of 1997, he anticipated that the amount of refugee interviews being performed in the Moscow office would be drastically reduced beginning in late 1997 or early 1998. (Cuddihy Depo. at 69–70.) Traditionally, immigration officers in the Moscow office had spent the vast majority of their time doing refugee interviews and related paperwork. (Cuddihy Depo. at 68–70.) Mr. Cuddihy consequently went on to state that, when considering applicants for the positions advertized in the July 1997 vacancy announcement, he looked for candidates with a strong background in enforcement and inspections. (Cuddihy Depo. at 54–56.) The vacancy announcement for the positions in question stated that successful applicants would be required to demonstrate experience in these areas. (Pl.'s Reply to Def.'s Oppo'n to Pl.'s Mot. for Summ. J., Ex. 5.) In this respect, Mr. Cuddihy stated that he was most impressed by candidates who demonstrated strong experience in criminal investigations including inspection work and recognition and detection of false documents and travel documents. (Cuddihy Depo. at 61.) Accordingly, the defendant asserts that Mr. Cuddihy's selections were based on his belief that the selected individuals had the most experience in these areas.

In support of Mr. Cuddihy's belief that the needs of the Moscow office would soon be

changing and, therefore, he needed to hire immigration officers with more extensive experience in criminal enforcement and inspections, the court notes the deposition of Ms. Anne Arries–Corsano. (Pl.'s Reply to Def.'s Opp'n to Pl.'s Mot. for Summ. J., Ex. 2 (hereinafter referred to as "Corsano Depo.")). Ms. Corsano is the Officer–In–Charge of the Moscow suboffice of the INS located in the American Embassy. (Corsano Depo. at 6.) The positions at issue in this case are under her supervisory control. Ms. Corsano assumed these duties in June 1996. (Corsano Depo. at 6.) Ms. Corsano states that the refugee interview workload at the Moscow suboffice was expected to significantly decrease. Specifically she states that, since 1996 when she arrived, she had been told to expect that the amount of time immigration officers spent on refugee interviews would drop from 90% of their time to approximately 25–30% of their time. (Corsano Depo. at 17–20.) Consequently, Ms. Corsano anticipated devoting only two of her eight full-time immigration officer positions to refugee interviews by July 1998. (Corsano Depo. at 38.)

As a result of this expected decrease, Ms. Corsano was instructed by her superiors to begin "building up" the enforcement program because the immigration officers under her supervision would be spending increasing amounts of time doing this type of work. (Corsano Depo. at 20–21.) In the fall of 1996, Ms. Corsano presented a plan to Mr. Cuddihy outlining the goals she sought to achieve in the enforcement and inspection areas. (Corsano Depo. at 24.) In implementing this plan, Ms. Corsano stated that in the summer of 1997 she was particularly interested in individuals that had "skill sets that could accomplish the enforcement and investigations workload" she anticipated the Moscow office would be undertaking. (Corsano Depo. at 26.) The defendant posits that this sentiment corroborates Mr. Cuddihy's claim that he viewed as the most important factor in the selection decision the experience each applicant demonstrated in the enforcement and inspection areas.

In addition, the defendant also points to a memo written by Ms. Corsano to Mr. Cuddihy to corroborate Mr. Cuddihy's claims regarding the qualifications he felt were important to the selection decision. This memo asks Mr. Cuddihy to assign an investigator to the Moscow office to assist in criminal investigations. (Def.'s Mot. for Summ. J., Ex. C). The defendant asserts that, despite the fact that this memo was written in May, 1998, some ten months after the positions at issue in this case were advertised, it nevertheless tends to corroborate Mr. Cuddihy's earlier expressed belief that the needs of the Moscow office would be changing to include a greater emphasis on enforcement and investigation work.

As further evidence of the defendant's non-discriminatory selection criteria, the defendant points to the fact that a 50 year-old-female was selected for a similar position advertised in April 1997. (Def.'s Reply to Pl.'s Opp'n to Def.'s Mot. for Summ. J. (hereinafter referred to as "Def.'s Reply") at 4.) This position was in the Moscow office and was advertised as an immigration officer position. Importantly, the plaintiff does not contest this fact. The defendant asserts that this demonstrates that the INS did not have a selection policy that illegally took into account a candidate's age when deciding who should get positions such as the ones at issue in this case.

Lastly, the defendant claims that Mr. Cuddihy also considered the plaintiff's past job performance when selecting the individuals for the positions at issue in this case. (Def.'s Reply at 6–7.) Mr. Cuddihy stated that his decision not to select the plaintiff was partially motivated by his familiarity with the plaintiff's past job performance. (Cuddihy Depo. at 36–37, 41–42, 60.) Mr. Cuddihy was aware that in 1992 or 1993, when he served in the plaintiff's supervisory chain, she experienced job performance problems. (Cuddihy Depo. 36–38.) Specifically, Mr. Cuddihy stated that, at the time he was considering the plaintiff's application, he remembered having to sign off on a performance improvement plan for the plaintiff when both he and she were stationed in the Administrative Appeals Office of the INS. (Cuddihy Depo. at 37.) Mr. Cuddihy stated that, while this recollection was not the determining factor in his

decision not to select the plaintiff, it did play a role. (Cuddihy Depo. at 41.)

After reviewing all of the defendant's proffered evidence of non-discriminatory motive, the court concludes that there are no issues of material fact as to whether the defendant has met its burden of production under the *McDonnell* analysis.

### c. Pretext

The court having thus concluded, the plaintiff must next show that the defendant's proffered non-discriminatory reasons were pretextual and that age was a determining factor in the hiring decision. *See McDonnell,* 411 U.S. at 802, 93 S.Ct. 1817. This evidence need not be direct evidence of discrimination but may be circumstantial. *See Coburn,* 711 F.2d at 343–44. Importantly, however, the plaintiff must do more than just deny or criticize the proffered reasons of the defendant. This court has stated that

> [e]vidence that the reasons given by an employe[r] for the employment decision were not the "real" ones does not prove age discrimination, it only proves that some other reason motivated the employer. Absent some evidence that the real reason was the employee's age … either directly through the employer's statements or actions regarding the plaintiff or indirectly through evidence of the employer's treatment of other members of the protected class, it is impossible for an employee to survive a motion for summary judgment.

*See Snyder v. Washington Hospital Center,* 36 F.E.P. 445, 448 (D.D.C.1984). At the summary judgment stage, failure on the plaintiff's part to demonstrate the existence of material facts indicating that the proffered reasons are merely pretextual or that the defendant was in fact animated by a discriminatory motive entitles the defendant to judgment. *See id.* at 448–49; *Skelton v. ACTION,* 668 F.Supp. 25, 27 (D.D.C.1987).

In the present case, the plaintiff has not met her burden in this respect. The plaintiff challenges the defendant's non-discriminatory reasons for not selecting her on three fronts. First, the plaintiff asserts that the claimed "changing needs" of the Moscow office are a red herring and that her evidence

shows that the duties of the immigration officers in that office have, in fact, not changed. Second, the plaintiff claims that, even if the Moscow Office did have changing needs, her qualifications and experience are far better tailored to these new job duties than those of the successful candidates. Lastly, the plaintiff posits that Mr. Cuddihy's reliance on her past performance problems was misplaced as she had improved her performance and was, at the time of the selection, performing well in her duties with the INS. The court finds the plaintiff's arguments to be unpersuasive.

Plaintiff first claims that, as of August 1998, the immigration officers in the Moscow office were still spending nearly all of their time doing refugee interviews and had not begun to spend significant amounts of time doing enforcement and inspections as anticipated by Mr. Cuddihy. Assuming that this fact is true, it has no bearing whatsoever on what Mr. Cuddihy, in the summer of 1997, anticipated would be happening in 1998. Ms. Corsano indicated in her deposition that the time table for reducing the number of refugee interviews had to be pushed back and that the anticipated reduction in interviews would not begin until July 1998. (Corsano Depo. at 32–33.) Furthermore, Ms. Corsano stated that it usually took one year from the time the position was posted until the successful applicant actually reported for duty. (Corsano Depo. at 21.) Considering all the evidence offered by the parties, the fact that the refugee interviews may not have declined as envisioned by the INS does not call into question what Mr. Cuddihy actually believed to be the future needs of the Moscow office at the time of his selection decision.

Second, plaintiff proceeds to compare her qualifications to those of the selected individuals to demonstrate that she was a more qualified applicant. The court has reviewed all of the submitted information with respect to the credentials of each of the selected individuals, as well as the plaintiff and the other individual who was not selected. All of the selected individuals demonstrated extensive knowledge of the Russian culture and people as well as fluency in the Russian language. The plaintiff also demonstrated

such knowledge and fluency. All of the selected individuals also demonstrated some investigatory experience within the INS. One of the applicants had experience as a special agent investigating Russian organized crime. (Def.'s Mot. for Summ. J., Ex.A at 4, 6.) Another selected applicant had experience as a special agent conducting liaison activities with intelligence and law enforcement agencies and participating in complex investigations. (Def.'s Mot. for Summ. J., Ex. A at 7.) The two other successful applicants had experience as inspectors including the detection of fraudulent travel documents. (Def.'s Mot. for Summ. J., Ex. A at 10–11.) The plaintiff, on the other hand, demonstrated only minimal experience in this area. Plaintiff did indicate some service with the Federal Bureau of Investigation. (Pl.'s Opp'n to Def.'s Mot. for Summ. J. (hereinafter referred to as "Pl.'s Opp'n") at 10.) [2] However, according to the evidence submitted by the plaintiff, this position did not involve her actively participating in investigations. (Pl.'s Opp'n at 10.) Rather, the job required the plaintiff to "prepare[ ] and conduct[ ] lectures" for FBI personnel on "numerous issues concerning Russia/ former Soviet Union." (Pl.'s Opp'n at 10.) Lastly, while plaintiff's application materials indicate that she had some experience in the detection of fraudulent documents. Mr. Cuddihy stated that two of the plaintiff's supervisors had informed him that the plaintiff had "little experience in the areas of fraudulent travel document detection or criminal investigations." (Cuddihy Depo. at 99.)

In her submissions, plaintiff also criticizes the qualifications of the applicant selected for the immigration officer position advertised in April 1997. The plaintiff applied for this position and was not selected. The successful candidate was a 50–year–old female. The plaintiff's efforts in this regard are misplaced. First, the plaintiff's non-selection for this position is not an issue in the case currently before the court. The only positions included as a basis for plaintiff's claims in this case are the positions advertised in the July 1997 vacancy announcement. As such, the plaintiff's opinion as to the relative

strengths and weaknesses of the successful candidate in the April 1997 position is immaterial. Secondly, the selected candidate for the April 1997 position was a **50–year–old female**. This fact not only precludes plaintiff from making an ADEA claim with respect to her non-selection for that position, but it also is strong evidence that the defendant was not engaging in illegally discriminatory conduct when it failed to select the plaintiff for any of the positions advertised in July 1997, a mere four months later.

Plaintiff's argument with respect to the comparison of her qualifications with those of the selected candidates truly misses the point. It is the plaintiff's duty to put forth evidence of discrimination, not to "quibble about the candidates' relative qualifications." *See Skelton,* 668 F.Supp. at 26. It is not within the court's province to second-guess an employer's choice of candidates. *See id.* Even if the plaintiff did prove that she were better qualified that, without more, would indicate nothing more than the defendant made a faulty hiring decision. *See id.* at 26–27. Such evidence would not indicate that the plaintiff failed to obtain the position in question because of her age. *See id.* at 27. "Unless the employer's choice of candidates can be shown to have been tainted by unlawful discrimination, it must be allowed to stand, no matter how unwise it may seem to the disappointed applicant." *See id.* Consequently, the plaintiff's opinion of the relative merits of her credentials as opposed to those of the selected individuals are irrelevant. Accordingly, the court concludes that the plaintiff has failed to carry her burden of providing sufficient evidence to rebut this non-discriminatory reason for her non-selection.

Lastly, the plaintiff asserts that Mr. Cuddihy considered failures in her job performance from several years ago in making his selection and ignored her more recent, improved performance. (Pl.'s Opp'n at 11.) Mr. Cuddihy stated that he considered the plaintiff's past performance difficulties as well as her improved performance in making

---

**2.** The plaintiff failed to number the pages on this submission. Consequently, the page numbers referred to are derived from the court's review of this submission.

his selection decision. (Cuddihy Depo. at 45–46.) The plaintiff, however, does not dispute that she had performance problems while under Mr. Cuddihy's indirect supervision in 1992 and 1993. An employer is entitled to rely on his perception of an employee's work performance. *See Smith v. Chamber of Commerce*, 645 F.Supp. 604, 608 (D.D.C. 1986); *Smith v. Flax*, 618 F.2d 1062, 1067 (4th Cir.1980). Consequently, even if Mr. Cuddihy did not consider plaintiff's more recent, improved performance, that does not indicate an illegal discriminatory intent on Mr. Cuddihy's part as he could have relied solely on the plaintiff's uncontested past performance problems.[3]

### 2. Legal Standard—Retaliation

■ Plaintiff's amended complaint also contains a claim of retaliation. Specifically, plaintiff claims that after she filed her EEO complaint with respect to her non-selection for the positions at issue in this case, she applied for another immigration officer position elsewhere in the INS. The plaintiff alleges that after she applied for this position the vacancy announcement was withdrawn and then reissued, allowing a broader group of candidates to apply. The defendant does not deny these allegations, however, these facts do not make out a prima facie case of retaliation. As such, the defendant's motion for summary judgment on this count will also be granted.

■ In order to make out a prima facie case of retaliation a plaintiff must demonstrate that (1) she engaged in EEO-protected activity and that the employer had knowledge of the plaintiff's EEO activity; (2) she was subject to adverse action by her employer; and (3) there is a causal connection between the protected activity and the adverse action. *See Thomas v. National Football League Players Ass'n*, 131 F.3d 198, 202 (D.C.Cir.1997). As to the first point, the plaintiff has clearly shown that she engaged in a protected activity (filing an EEO complaint) and that the defendant was aware of this activity. However, the plaintiff's submissions do not contain any evidence to demonstrate that she was subject to adverse action by her employer. The plaintiff has not shown that allowing the INS to select from a greater pool of applicants is necessarily adverse to her. Similarly, the plaintiff has failed to demonstrate any causal connection between the protected activity in which she engaged and the alleged adverse action. Consequently, summary judgment in favor of the defendant on this count is appropriate.

### IV. CONCLUSION

For the aforementioned reasons the court concludes that the plaintiff has failed to introduce evidence to rebut the defendant's nondiscriminatory reasons underlying its non-selection of the plaintiff for the positions at issue in this case. In addition, the plaintiff has failed to make out a prima facie case of retaliation. Accordingly, because there are no genuine issues of material fact the court will enter summary judgment in favor of defendant and will deny plaintiff's motion for summary judgment. The required order directing the parties in a fashion consistent with this memorandum opinion is separately and contemporaneously executed and issued this 18th day of December, 1998.

---

**3.** The plaintiff has not contradicted other evidence offered by the defendant indicating that the other unselected candidate, who was also over forty years old, had job performance problems in a previous INS assignment in Moscow. Mr. Cuddihy stated that he was aware of these subpar job performance reviews and considered them in his selection decisions.