**Barbara E. TOLSON, Plaintiff,**

**v.**

**Bruce R. JAMES, Public Printer, Government Printing Office, Defendant.**

**Civ.A. No. 02–2268(ESH).**

United States District Court, District of Columbia.

April 28, 2004.

Phoebe Leslie Deak, Deats & Levy, P.C., Washington, DC, for Plaintiff.

Peter Blumberg, United States Attorney's Office, Washington, DC, for Defendant.

## MEMORANDUM OPINION

HUVELLE, District Judge.

Plaintiff, an African–American female, was denied a position as a Printing Specialist in the production department of the Government Printing Office ("GPO") in September 1999. She alleges that her non-promotion was motivated by unlawful considerations of race and gender in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.* Defendant has moved for summary judgment arguing that plaintiff has failed to present sufficient evidence to establish that GPO's reasons for not selecting her were pretextual. For the reasons outlined below, the motion will be granted.

## BACKGROUND

In the summer of 1999, the GPO advertised a Printing Specialist position in its production department, a division of the Office of the Production Manager, as a result of the retirement of the previous Printing Specialist, Rosetta Hawkins. This Printing Specialist's primary function is to serve as a liaison between the production department and GPO's bindery, and thus, every incumbent in the position since 1971 has had prior supervisory-level experience in a book bindery. (*See* Defendant's Statement of Material Facts Not in Dispute [Def. St.] ¶¶ 2, 6.) Although this supervisory experience was not specifically identified as a prerequisite for the position, Donald Ladd, GPO's Production Manager and the senior official responsible for filling the vacancy, considered it a "primary factor" when assessing a candidate's qualifications.[1] (*See* Def. St. ¶ 20.) Michael

---

1. The Vacancy Announcement indicated that the printing specialist "advises the Production Manager on the formulation and issuance of printing policies, procedures and controls af-

fecting assigned program as well as other Production department facilities." (Mot. Ex. 6 [Vacancy Announcement] at 1.) The term "assigned program" was a reference to GPO's

Cantor, the official charged with recommending candidates for the position, also viewed bindery foreperson experience as an important applicant attribute. (*See id.* ¶¶ 14, 18.)

Five people, including plaintiff, applied for the position. At that time, plaintiff was employed as a Printing Specialist for a GPO division—the Production Estimating and Planning System (PEPS)—where she was responsible for keeping the various GPO printing and binding projects on schedule. (*See id.* ¶ 8; Opp. at 7.) She had last worked in a bindery on a full time basis in 1971. (*See* Def. St. ¶ 10.) Mr. Canter reviewed her application and observed her in her PEPS position, noting that although her work was proficient, she did not have the level of bindery-specific expertise he believed necessary for him to recommend her for the position. (*Id.* ¶ 16.) Likewise, Mr. Ladd chose not to select her because she lacked supervisory bindery experience. (*Id.* ¶ 24.) Instead, Thomas Hawes, a white male with over forty-four years of experience in the binding trade, was selected for the position. (*Id.* ¶¶ 12, 23.) Mr. Cantor recommended Mr. Hawes for the position due to his extensive work experience in the binding craft, and Mr. Ladd selected him because his significant supervisory experience in the bindery gave him the knowledge and expertise needed to successfully perform the position's functions. (*Id.* ¶¶ 17, 21.)

During the selection process, current GPO employees were assigned to the vacant Printing Specialist position on a temporary rotating basis until a permanent replacement was hired. (*Id.* ¶ 32.) The bindery's Assistant Superintendent (James Williams), responsible for selecting individuals for the rotation, chose three bindery supervisors, including Mr. Hawes, to fill the position. (*Id.* ¶ 34–35.) Plaintiff requested to be detailed into the rotation, but was not selected. (*Id.* ¶¶ 36–37.)

Plaintiff contends that GPO's failure to select her for the Printing Specialist position and its refusal to give her the opportunity to detail into the position were improperly motivated by discriminatory animus based on her race and sex.

## ANALYSIS

### A. Summary judgment standard

Defendant's motion for summary judgment should be granted if the pleadings and the record show that there is no genuine issue of material fact and that defendant is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (citing Fed.R.Civ.P. 56). In considering a motion for summary judgment, the "evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in [her] favor." *Id.* at 255, 106 S.Ct. 2505; *see also Washington Post Co. v. United States Dep't of Health and Human Servs.,* 865 F.2d 320, 325 (D.C.Cir. 1989). Plaintiff's opposition, however,

bindery. (*See* Def. St. ¶ 3.) The announcement also stated that the incumbent "[r]eviews productive output of Binding Division operations, and advises the Superintendent of production variances. Investigates latent details in binding materials, ... makes recommendations for rejection, substitution or other remedial action ... [k]eeps abreast of new developments in the printing and binding industry [and][i]nitiates contacts with equipment suppliers and reviews and evaluates new bindery equipment or procedures." (Mot. Ex. 6 [Vacancy Announcement] at 1.) In a statement justifying the hiring of a replacement for Ms. Hawkins, Mr. Ladd indicated that the "incumbent selected to fill this position will provide the Production Manager with Binding expertise required to meet timely delivery requirements of important products." (Mot. Ex. 5 [Justification to Fill Vacancy] at 1.)

must consist of more than mere unsupported allegations; it must be supported by affidavits or other competent evidence setting forth specific facts showing that a reasonable jury could find in her favor. *See* Fed.R.Civ.P. 56(e); *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Laningham v. United States Navy,* 813 F.2d 1236, 1242 (D.C.Cir.1987.) Thus, although summary judgment should be approached with special caution in discrimination cases, a "plaintiff is not relieved of her obligation to support her allegations by affidavits or other competent evidence showing that there is a genuine issue for trial." *Calhoun v. Johnson,* No. 95–2397, 1998 WL 164780, at *3 (D.D.C. March 31, 1998), *aff'd,* No. 99–5126, 1999 WL 825425, at *1 (D.C.Cir. Sept. 27, 2000) (citation omitted). In addition, Local Civil Rule 7.1(h) requires that the opposition to a summary judgment motion "shall be accompanied by a separate concise statement of genuine issues setting forth all material facts as to which it is contended there exists a genuine issue necessary to be litigated, which shall include references to the part of the record relied on to support the statement."

In contravention of these requirements, plaintiff's "Statement of Genuine Issues of Material Fact in Dispute" [Pl. St.] consists of nothing more than a page and a half of unsubstantiated and conclusory assertions and allegations.[2] Her statement provides no citation to the record, and she has produced no affidavit with facts to support her allegations. Thus, the self-serving assertions in plaintiff's statement do not constitute competent evidence setting forth specific facts showing that a reasonable jury could find in her favor. Plaintiff, moreover, has failed to contest the facts

presented in defendant's statement. As such, the Court may treat as conceded defendant's statement of uncontested facts. *See* L.Cv.R. 7.1(h) ("the court may assume that facts identified by the moving party in its statement of material facts are admitted, unless such a fact is controverted in the statement of genuine issues filed in opposition to the motion"); *Twist v. Meese,* 854 F.2d 1421, 1425 (D.C.Cir.1988) (the parties bear the burden to "identify the pertinent parts of the record, to isolate the facts that are deemed to be material, and to distinguish those facts which are disputed from those that are undisputed"); *see also Jackson v. Finnegan, Henderson, Farabow, Garrett, & Dunner,* 101 F.3d 145, 153 (D.C.Cir.1996) (noting the burden is on counsel, not the court, to "winnow the wheat from the chaff"). These procedural defects would likely be fatal to plaintiff's claim. As demonstrated below, however, even considering the portions of the record that plaintiff cites in the body of her opposition and drawing all reasonable inferences in her favor, she has failed to demonstrate that summary judgment is not appropriate.

### B. The *McDonnell Douglas* framework

Defendant seeks summary judgment, triggering the application of the *McDonnell Douglas* three-part "shifting burdens" test. *See McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Plaintiff has the initial burden of proving a *prima facie* case of discrimination. *Id.* at 802, 93 S.Ct. 1817. If she succeeds, the burden shifts to defendant "to articulate some legitimate, nondiscriminatory reason for the employ-

---

2. For example, she claims that she was "far better qualified than the selectee for the Printing Specialist position," that "[s]upervisory experience in the Bindery Division was irrele-

vant to the Printing Specialist at issue," and that Mr. Ladd chose Mr. Hawes for the position "because he wanted to select a male." (Pl.St. ¶¶ 4–6.)

ee's rejection." *Id.* The burden on the defendant is merely one of articulation, and thus, it "need not persuade the court that it was actually motivated by the proffered reasons." *Tex. Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248, 254, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981); *Fischbach v. Dist. of Columbia Dep't of Corr.,* 86 F.3d 1180, 1183 (D.C.Cir.1996).

Should defendant meet its burden, then "the *McDonnell Douglas* framework—with its presumptions and burdens—disappear[s], and the sole remaining issue [is] discrimination *vel non.*" *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 142–43, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000) (internal citations and quotation marks omitted). At that point, plaintiff has the burden of persuasion to show that defendant's proffered nondiscriminatory reason was not the true reason for the employment decision. *Burdine,* 450 U.S. at 256, 101 S.Ct. 1089; *see also Morgan v. Fed. Home Loan Mortgage Corp.,* 328 F.3d 647, 651 (D.C.Cir.), *cert. denied,* —— U.S. ——, 124 S.Ct. 325, 157 L.Ed.2d 146 (2003) ("[a]lthough the *McDonnell Douglas* framework shifts intermediate evidentiary burdens between the parties, [t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff") (internal citations and quotation marks omitted).

Thus, if plaintiff does not adduce evidence that "could allow a reasonable trier of fact to conclude that [defendant's] proffered reason was a pretext for discrimination, summary judgment must be entered against [plaintiff]." *Paquin v. Fed. Nat'l Mortgage Ass'n,* 119 F.3d 23, 27–28 (D.C.Cir.1997). Plaintiff may establish pretext "directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered ex-

planation is unworthy of credence." *Burdine,* 450 U.S. at 256, 101 S.Ct. 1089. "It is not enough for the plaintiff to show that a reason given for a job action is not just, or fair, or sensible. He must show that the explanation given is a phony reason." *Fischbach,* 86 F.3d at 1183 (citation omitted). "Once the employer has articulated a non-discriminatory explanation for its action, ... the issue is not the correctness or desirability of [the] reasons offered ... [but] whether the employer honestly believes in the reasons it offers." *Id.* (citation and internal quotation marks omitted). In other words, the final burden to prove intentional discrimination lies with the plaintiff. *Id.* at 1182; *see also Schnabel v. Abramson,* 232 F.3d 83, 90 (2d Cir.2000) (affirming summary judgment where plaintiff established a *prima facie* case and set forth some evidence of pretext, but presented no evidence from which a reasonable trier of fact could infer discrimination).

### C. Non-promotion claim

■ Since defendant "does not dispute that plaintiff can satisfy her burden to establish a *prima facie* case" (Mot. at 14), the burden immediately shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its non-selection decision. The evidence defendant proffers is more than sufficient to support a finding of such a reason. Simply put, the candidate selected had the extensive bindery division supervisory experience that both the recommending and selecting officials sought.

The importance of bindery expertise, and specifically supervisory experience in the bindery, was clearly established before any applications were considered for the position. Mr. Ladd had indicated that the incumbent would provide him with "binding expertise" (*see* Mot. Ex. 5 [Justification to Fill Vacancy] at 1), and the vacancy

announcement sought someone to provide advice regarding—and to act upon—"policies, procedures and controls" affecting the bindery, "remedial action" required for defects in binding procedures and products, and "new developments in the printing and binding industry." (Mot. Ex. 6 [Vacancy Announcement] at 1.) The duties of the position led the hiring officials to favor bindery supervisors, who could offer "knowledge of the equipment, operations and personnel of the Binding Division." (Def.St. ¶ 20.) Indeed, as plaintiff admits, everyone in the position at issue since 1971 had supervisory-level binding experience.[3] (*Id.* ¶ 6; Mot. Ex. 3 [EEO Tr.] at 114–15.)

It is equally as clear that Mr. Hawes, the selectee, had both the bindery expertise and supervisory experience that Mr. Ladd sought for the position. At the time he submitted his application, Mr. Hawes was a supervisor in the bindery. During his forty-four years of experience in the binding trade, he had completed a formal apprenticeship, worked his way through the ranks of Journeyman Bookbinder, and held several GPO supervisory bindery positions including Group Chief, Assistant Foreperson, and Foreperson. (*Id.* ¶ 12.) In his application, Mr. Hawes described specific bindery functions he had completed and management decisions he had made, demonstrating his extensive bindery experience. (*See* Mot. Ex. 13 [Hawes' Application].)

In contrast, plaintiff's application reflected a lack of supervisory bindery experience as compared to that of Mr. Hawes. Although she began her career at a private bindery and worked as a GPO Journeyman Bindery Worker for four years, she had not been employed in a bindery since 1971. (*See* Mot. Ex. B. [EEO Tr.] at 109–10.)

When she applied for the position, she was a PEPS coordinator "responsible for insuring that the various printing and binding departments kept to the schedule." (Opp. at 7.) Although she may have "acquired a broad knowledge of the GPO printing process ... [and] the individuals, the operations and the work flows of the print jobs" (*id.* at 8), her supervisor confirmed that she had little interaction with the bindery. (*See* Mot. Ex. 22 [Bond Dec.] ¶ 2 ("Ms. Tolson's work does not involve interacting with the craft sections, such as the bindery, except to distribute daily reports or perform [her PEPS functions].").)

Defendant's reliance on supervisory bindery experience, therefore, constitutes a nondiscriminatory reason for selecting Mr. Hawes over plaintiff for the Printing Specialist position. Plaintiff's burden, then, is to adduce evidence sufficient to convince a trier of fact that defendant's reason was a pretext for discrimination. *See Burdine,* 450 U.S. at 256, 101 S.Ct. 1089. In this regard, plaintiff argues, *inter alia,* that she was "clearly more qualified for the position" than the selectee (Pl.St. ¶ 5), and that supervisory bindery experience should not have been considered as a primary qualification for the job. (*Id.* ¶ 4.) None of plaintiff's arguments, however, satisfies her burden.

■ First, plaintiff tries to support an inference of discrimination by asserting that she was "far better-qualified" for the job than Mr. Hawes. For example, she characterizes her four-year tenure in the bindery during the late 1960s as "substantial experience" (Pl.St. ¶¶ 1, 5), and claims that her "overall experience simply overwhelms that of Mr. Hawes." (Opp. at 38.)

---

**3.** Plaintiff's testimony at the EEO hearing demonstrated her understanding that knowledge of the bindery was an important qualification for the position. (See Mot. Ex. 3 [EEO Tr.] at 85, 105–06.)

■ Plaintiff's belief that her qualifications and experience make her a more suitable candidate for the job, however, does nothing to discredit defendant's legitimate explanation for its actions. A "[p]laintiff cannot establish pretext simply based on her own subjective assessment of her own performance, for plaintiff's perception of herself, and of her work performance, is not relevant. It is the perception of the decisionmaker which is relevant." *Waterhouse v. Dist. of Columbia,* 124 F.Supp.2d 1, 7 (D.D.C.2000), *aff'd,* 298 F.3d 989, 997 (D.C.Cir.2002). *See also Hastie v. Henderson,* 121 F.Supp.2d 72, 81 (D.D.C.2000), *aff'd sub nom., Hastie v. Potter,* No. 00–5423, 2001 WL 793715, at *1 (D.C.Cir. June 28, 2001) (finding no genuine issue of material fact where the sole evidence plaintiff provided was "her own self-serving and conclusory statement" that she was more qualified); *Saunders v. DiMario,* No. 97–1002, 1998 WL 525798, at *4 (D.D.C. Aug. 14, 1998), *aff'd,* 194 F.3d 175 (D.C.Cir.1999) ("Plaintiff has otherwise offered the type of self-serving allegations that are simply insufficient to establish pretext."). Mr. Ladd, as the selecting official, stated that he took into consideration plaintiff's binding division experience, as well as her experience in the production department, and her occasional substitutions for the previous incumbent in the position, but nonetheless he determined her experience was insufficient. (*See* Mot. Ex. 1 [EEO Tr.] at 26–27, 31–32, 44–45.) Indeed, the record clearly demonstrates that Mr. Ladd's good-faith evaluation of the candidates' applications and their relative experience

justifies his conclusion that Mr. Hawes, with his forty-four years of bindery expertise, had substantially more relevant experience. (*See* Def. St. ¶¶ 8–9, 12–13, 20–22, 24.)

Moreover, even assuming *arguendo* that plaintiff were more qualified, the Court cannot infer discrimination absent a showing that her qualifications were far superior to those of the successful candidate. *See Stewart v. Ashcroft,* 352 F.3d 422, 429 (D.C.Cir.2003) (a plaintiff proffering evidence of "stark superiority of credentials" between himself and the successful candidate may survive summary judgment, while a plaintiff demonstrating only "fine distinctions" between their qualifications will not); *Aka v. Washington Hosp. Ctr.,* 156 F.3d 1284, 1294 (D.C.Cir.1998) (*en banc*) (discrimination may be inferred if a reasonable employer would have found the plaintiff to be significantly better qualified for the job, but this employer did not); *see also Edwards v. Principi,* No. 03–50504, 2003 WL 22709001, at *2 (5th Cir. Nov. 18, 2003) (to show pretext, "a plaintiff [must] show a difference in his qualifications superior to that of the person selected so apparent as to virtually jump off the page and slap us in the face") (internal citation and quotation marks omitted). Plaintiff does not dispute Mr. Hawes' bindery experience or knowledge, and claims only that she had "sufficient Bindery Division experience" to "minimally qualify" her for a bindery-related position.[4] (Pl. St. ¶ 5; Opp. at 38.) By plaintiff's own admission, then, it was Mr. Hawes who was significantly more qualified for the job.[5]

---

**4.** Plaintiff states that after she was denied the position at issue, she applied for a vacant Assistant Foreman position in the Bindery, and "was found to be qualified for that position." (Opp. at 38.) This fact is of little consequence, however, since plaintiff was

also found to be minimally qualified for the position at issue. (*See* Mot. at 7.)

**5.** Plaintiff attempts to establish that Mr. Hawes was not even "minimally qualified" for the position "because he lacked fifty two weeks of experience at the next lower grade,"

Instead, plaintiff's contention that she was more qualified appears to be based on her belief that "[s]upervisory experience in the Bindery Division was irrelevant to the Printing Specialist [position] at issue." (Pl.St. ¶ 4.) She argues that her experience in the PEPS Division "provided her better experience for the [position] than supervisory experience in the Bindery Division" (*id.* ¶ 3), because her work in GPO's production department "was very similar to the work done in the printing specialist position at issue here." (Opp. at 6.) To support her claim, she offers the testimony of Ms. Hawkins, the retiree who previously held the position at issue, who states that, although she herself had supervisory bindery experience, such a background was not relevant to the Printing Specialist position, and thus, one could perform the position without this experience. (*See* Opp. Ex. 1 [EEO Tr.] at 293–294.) Indeed, Ms. Hawkins testified that an applicant with plaintiff's background could "do better" in the position than someone with only bindery experience. (*Id.*) Plaintiff's attempt to establish pretext in this manner, however, is unavailing.

The D.C. Circuit recently rejected a similar argument in *Stewart.* There, while the government maintained that management experience was the most critical qualification for a position, the unsuccessful applicant for the job "incorrectly and perhaps wishfully, state[d] that litigation experience is the most critical trait." 352 F.3d at 429. The Court deferred to the government's "decision of what nondiscriminatory qualities it will seek" in filling the position, because courts are not "super-personnel department[s] that reexamine[ ] an entity's business decision[s]." *Id.* (quoting *Dale v. Chicago Tribune Co.,* 797 F.2d 458, 464 (7th Cir.1986)). An employer has discretion to choose among qualified candidates for a position, *see Burdine,* 450 U.S. at 259, 101 S.Ct. 1089, and absent a demonstrably discriminatory motive, an employer's personnel decision—such as the choice of relevant qualifications—simply cannot be second-guessed. *See Fischbach,* 86 F.3d at 1183. Here, defendant has identified prior experience in the GPO bindery as the "nondiscriminatory quality" Mr. Ladd used to evaluate applicants, and plaintiff's disagreement with the use of

---

as required by the vacancy announcement. (Pl.St. ¶ 8.) The expert opinion she offers as proof, however, fails to establish that Mr. Hawes did not fulfill this requirement (Mot. Ex. 19 [Knudsen Tr.] at 66–67 ("it's not clear from his application that he did meet it; . . . it's unresolved whether he met it")), and moreover, plaintiff does not refute the testimony of a GPO personnel specialist, Ginger Thomas, explaining why Mr. Hawes was not required to satisfy this time-in-grade requirement. (*See* Mot. at 30 (citing Mot. Ex. 12 [Thomas Dec.] ¶¶ 5–7).)

In any event, whether Mr. Hawes was "minimally qualified" under this standard has no bearing. The GPO personnel specialist who was responsible for making this evaluation decided that Mr. Hawes, as well as the other four applicants for the job, were all minimally qualified, and thus forwarded all of the applications to Mr. Ladd. (Mot. Ex. 12

[Thomas Dec.] ¶¶ 2–3.) The accuracy (or inaccuracy) of her determination has no bearing on Mr. Ladd's honest belief that Mr. Hawes had the most relevant experience for the position. Moreover, there is no indication that Mr. Hawes' lack of fifty-two weeks of experience at the next lower grade would be relevant to a determination of his actual qualifications. In short, since plaintiff cannot show that she was clearly superior, her "argument[ ] with respect to the comparison of her qualifications with those of the selected candidate[ ] truly misses the point . . . . [She must] put forth evidence of discrimination, not . . . 'quibble about the candidates' relative qualifications.' " *Vasilevsky v. Reno,* 31 F.Supp.2d 143, 150 (D.D.C.1998) (quoting *Skelton v. ACTION,* 668 F.Supp. 25, 26 (D.D.C.1987), aff'd, No. 87–5353, 1988 WL 156306, at *1 (D.C.Cir. May 12, 1988)).

this criteria does not establish that this was a "phony" reason. *See id.*

In addition, plaintiff insists that supervisory bindery experience cannot be a primary qualification for the position, because it was not listed in the vacancy announcement as a prerequisite. As noted above, however, the vacancy announcement clearly outlined the incumbent's bindery-related duties. More importantly, the record demonstrates that defendant in fact based its hiring decision on the applicants' bindery experience. Plaintiff, on the other hand, fails to establish pretext, since she has offered no evidence to support the proposition that such experience was not the true basis for Mr. Ladd's selection. *See Carpenter v. Fed. Nat'l Mortgage Ass'n,* 174 F.3d 231, 237 (D.C.Cir.1999) (summary judgment for defendant was proper where plaintiff failed to accompany her "false qualification" theory with evidence that the employer did not base its hiring decision on the named qualification).

Plaintiff also attempts to discredit Mr. Ladd's focus on supervisory bindery experience by claiming that use of this criteria "simply prolongs the effects of [GPO's] past discrimination system" found in *Thompson v. Boyle,* 499 F.Supp. 1147 (D.D.C.1981), *aff'd sub nom., Thompson v. Sawyer,* 678 F.2d 257 (D.C.Cir.1982) (upholding findings of fact but remanding for revision of remedies).[6] (Opp. at 34.) Presumably, she is claiming that the remnants of this "discriminatory system" prevented her from acquiring the supervisory bindery experience that would have made her a more competitive applicant for the position. (*See id.* at 32–34.) This argument

fails, not only because plaintiff has failed to show how this twenty-five year old disparate impact class action has any relevance to her discrimination claim, but also because the undisputed evidence is contrary to her position. Most significantly, the previous incumbent in the position at issue, Ms. Hawkins, is an African–American female who had worked as a supervisor in the bindery. (*See* Opp. at 8–9; Reply at 12.) In addition, there were other African–American women in bindery supervisor positions, but they chose not to apply for the job at issue. (*See* Reply Ex. 2 [Williams Dec.] ¶¶ 7–8.) In contrast, plaintiff has offered no evidence to demonstrate that a history of discriminatory treatment, rather than her decision to pursue her career in other GPO divisions, contributed to her lack of supervisory bindery experience.

■ Finally, plaintiff attempts to demonstrate discrimination by creating suspicions regarding Mr. Ladd's motivations, and by claiming that he pre-selected Mr. Hawes for the position because he wanted a "bindery male for the position." (Pl.St. ¶ 6.) Pre-selection does not violate Title VII unless it is based on discriminatory motives, *see Murray v. Browner,* No. 93–2173, 1996 WL 383304, at *9 (D.D.C. June 27, 1996), and as discussed above, plaintiff has produced no evidence of such a motive. Instead, she alleges, without support, that Mr. Ladd misstated Mr. Hawes' qualifications so that he "appeared more qualified than he was," and that Mr. Ladd must have known that Mr. Hawes "inflated his experience [on] his application to the point

---

**6.** *Thompson* was a class action in which the Court held that GPO's separate classification system for female journeyman bindery worker jobs and male bookbinder jobs in the 1970s perpetuated the effects of past discrimination, was not justified by business reasons, and constituted a pattern and practice of discrimi-

nation. 499 F.Supp. at 1167. There, the GPO's discriminatory practices were blamed for the plaintiffs' inability to advance within the GPO bindery to bookbinder, supervisory, and printing specialist positions. *Id.* at 1169–70.

of falsehood." (Opp. at 36.) Upon review, however, plaintiff's unsubstantiated complaints do not raise material issues of fact, nor do they have any bearing upon the relative supervisory bindery experience of the applicants.[7]

In short, plaintiff has failed to establish that Mr. Ladd's decision to promote Mr. Hawes, and not plaintiff, was the result of discriminatory animus. He sought an incumbent with supervisory bindery division experience, and chose a candidate that offered that experience. Because plaintiff cannot demonstrate that this explanation for Mr. Ladd's selection decision is unworthy of credence, summary judgment for defendant on the non-promotion claim is appropriate.

### D. Failure to provide an opportunity to temporarily fill the vacancy

■ Although not presented as a separate count in the complaint, plaintiff also claims that she was "aggrieved and injured by defendant's denial to detail her into the ... position because this denial hurt her promotional opportunities." (Opp. at 21.) Even assuming without deciding that defendant's refusal to allow plaintiff to temporarily fill the vacancy constitutes an actionable adverse action, the Court would find that summary judgment is appropriate on this claim as well, for defendant has presented a legitimate, non-discriminatory reason for its choice, and plaintiff has again failed to show pretext.

Defendant's valid explanation for detailing three other employees, but not plaintiff, is that Mr. Ladd needed temporary assistance from people who had the requisite skills, knowledge and experience in the bindery, and he had no one available to train an interim employee who did not have this experience. (See Reply at 18; Mot. Ex. 1 [Ladd Tr.] at 56–57, 64–67.) Consistent with this requirement, each individual who rotated into the temporary vacancy was a current supervisor in the bindery. (Def.St. ¶ 34.) In fact, it was the bindery's Assistant Superintendent (not Mr. Ladd) who was responsible for selecting the bindery supervisors who would fill the rotating detail. (Id. ¶ 35.)

Plaintiff does not dispute these facts. Instead, she attacks defendant's articulated rationale as "discriminatory on its face." (Opp. at 23.) In an attempt to support this assertion, she cites Mr. Ladd's testimony that he did not want plaintiff to detail because he "didn't want to give her preferential treatment" for promotion by training her in the position (Mot. Ex. 1 [Ladd Tr.] at 47), as that treatment "would alienate numerous binding division supervisors who had invested 10 to 15 years gaining the experience necessary to qualify" for the position. (Mot. Ex. 3 [EEO Tr.] at 169–70.) Plaintiff claims that Mr. Ladd's position reveals his "deepest fear"—if plaintiff were detailed, she would be "so much better qualified than the bind-

---

7. For example, plaintiff alleges that Mr. Hawes and Mr. Ladd both implied that Mr. Hawes had been temporarily detailed into the position at issue for longer than he actually was. (See Opp. at 36–37.) However, the record reveals no improper implications, and more importantly, there is no evidence that the length of time of an applicant's detail was a factor considered by the decision-makers. In fact, Mr. Ladd stated that he sought binding division experience, and that he chose Mr. Hawes because of his years working in the bindery, not because he had filled the position at issue on an interim and intermittent basis. (See Reply at 15.) Furthermore, plaintiff focuses on these facts in an attempt to demonstrate that she had *more* experience in the position at issue than Mr. Hawes, because she had filled in for the incumbent in the position during her intermittent absences. (See Opp. at 8–9.) But, as already noted, "[q]uibbl[ing] about the candidates' relative qualifications," will not stave off summary judgment. *Vasilevsky*, 31 F.Supp.2d at 150.

ery men that he would have no choice but to select her." (Opp. at 24.) She also claims that her need for training for the detail is not a legitimate excuse for refusing to detail her, because the individuals who were rotated into the vacancy required training for the position as well. (Opp. at 22.) Ms. Hawkins, plaintiff claims, testified herself that the interim employees could not have done the job without any training. (*See* Opp. Ex. 1 [EEO Tr.] at 297.)

Notwithstanding the flaws in the conclusions plaintiff draws from the facts, her challenges to defendant's basis for refusing to detail her do not support an inference of discrimination against her based on race or gender. In fact, by acknowledging that only bindery supervisors (and no one in a position such as hers) were detailed, plaintiff has failed to show that similarly situated people outside the protected class were treated differently than she was, as is necessary for a finding that defendant's actions were discriminatory. *See Holbrook v. Reno*, 196 F.3d 255, 261 (D.C.Cir.1999). Moreover, her ability to draw an inference of discrimination is further undermined by the fact that the Assistant Superintendent (James Williams) of the bindery, who chose the employees to fill the rotating detail at issue, has represented that, "[i]n prior times of a vacancy at the Printing Specialist position," he has "assigned both black and white females to the position." (Reply Ex. 2 [Williams Dec.] ¶ 8.)

As with her non-promotion claim, therefore, plaintiff has not demonstrated that Mr. Ladd's steadfast insistence on supervisory bindery experience was a mere pretext for discriminatory actions against her.

## CONCLUSION

For the reasons stated above, plaintiff has failed to show that defendant's proffered reasons for failing to promote or detail her were discriminatory. Accordingly, defendant's motion for summary judgment will be granted. A separate Order accompanies this Memorandum Opinion.

## *ORDER*

Upon consideration of the pleadings and the entire record herein, and for the reasons stated in the accompanying Memorandum Opinion, it is hereby

**ORDERED** that Defendant's Motion for Summary Judgment [# 17] is **GRANTED**; and it is

**FURTHER ORDERED** that the case is **DISMISSED WITH PREJUDICE**. This is a final and appealable order.

**IT IS SO ORDERED.**